PEOPLE v McCRACKEN

Docket No. 95746. Submitted March 1, 1988, at Lansing. Decided July 13, 1988.

Jean Marie McCracken was convicted of delivery of less than fifty grams of a controlled substance and was sentenced to from five to twenty years in prison, Macomb Circuit Court, Robert J. Chrzanowski, J. Defendant appealed, alleging error in the court's not allowing testimony as to defendant's sister's conduct when questioned about the delivery of the drug, in the court's mistaken belief that the Department of Corrections would put defendant back on the street in four to six months regardless of the minimum sentence imposed and in scoring Offence Variable 8 as if the case involved professional or organized crime.

The Court of Appeals *held:*

1. The testimony sought to be admitted was not relevant, and, if relevant, would have served to confuse or mislead the jury and was, thus, properly excluded.

2. The trial court improperly considered defendant's post-sentence ˙disposition by the Department of Corrections and misapprehended her eligibility for community placement. The record was not clear what effect this had on defendant's sentence.

3. The court misscored Offense Variable 8. Resentencing is necessary and error in scoring an offense variable is not harmless where the sentence imposed was greater than the minimum sentence allowable.

Affirmed, but remanded with instructions for resentencing.

KELLY, J., concurred, but wrote separately to absolve the trial judge of blame in commenting incorrectly on defendant's probable disposition by the Department of Corrections.

REFERENCES

Am Jur 2d, Criminal Law §§ 525 *et seq.*

Am Jur 2d, Evidence §§ 249 *et seq.*

Evidence offered by defendant at federal criminal trial as inadmissible, under Rule 403 of Federal Rules of Evidence, on ground that probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury. 76 ALR Fed 700.

1. EVIDENCE — RELEVANCE — RULES OF EVIDENCE.

Evidence which is not relevant is not admissible (MRE 402).

2. EVIDENCE — RELEVANCE — RULES OF EVIDENCE.

Relevant evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time or needless presentation of cumulative evidence (MRE 403).

3. CRIMINAL LAW — SENTENCING — GOOD TIME — DISCIPLINARY CREDITS — COMMUNITY PLACEMENT.

A sentencing judge may not consider the disposition of the defendant by the Department of Corrections as a result of good time and disciplinary credits in deciding on a sentence and, thus, may not consider the defendant's eligibility for community placement in passing sentence.

4. CRIMINAL LAW — SENTENCING GUIDELINES — OTHER CRIMES.

Points are scored under Offense Variable 8 where the court decides either that the defendant derived a substantial portion of his or her income from the criminal activities involved or that the instant offense is directly related to membership in an organized criminal group; under this variable, the court may consider other criminal activity for which no conviction resulted.

5. CRIMINAL LAW — SENTENCING GUIDELINES — PRESERVING QUESTION — BURDEN OF PROOF.

To preserve for appeal the issue of scoring an offense variable under the sentencing guidelines, the defendant must bring an effective challenge in the trial court at the time of sentencing; at that time the burden is on the prosecution to prove facts to support the scoring by a preponderance of the evidence.

6. CRIMINAL LAW — SENTENCING GUIDELINES — REMEDIES.

Resentencing is necessary and error in scoring an offense variable is not harmless where the sentence imposed was greater than the minimum sentence allowable.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Carl J. Marcinca,* Prosecuting Attorney, *Robert John Berlin,* Chief Appellate Lawyer, and *Edward L. Graham,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *James Krogsrud*), for defendant on appeal.

Before: SAWYER, P.J., and KELLY and J. J. RASHID,* JJ.

PER CURIAM. Defendant was convicted, following a jury trial, of delivery of less than fifty grams of a controlled substance. MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv). Defendant was thereafter sentenced to a term of from five to twenty years in prison. At sentencing, the trial court also sentenced defendant on an unrelated plea-based perjury conviction, imposing a consecutive sentence of from five to fifteen years. She now appeals and we affirm the conviction but vacate the sentence.

Defendant was visiting a friend, Thomas Cross, who, at the time of the instant offense, was a resident of the Macomb County Jail. In connection with her visit, defendant brought a bag of clothing for Cross. While defendant was visiting with Cross, a sheriff's deputy examined the contents of the bag and discovered a suspicious looking pair of undershorts. The deputy found something in the waistband of the undershorts, so she cut it open, and found a small package of yellowish powder which proved to be 1.03 grams of oxycodone, commonly known as Percodan, a controlled substance. Defendant's defense was that she was unaware that the oxycodone was in the waistband of the undershorts and that she was merely an innocent intermediary.

At trial, defendant cast suspicion on her sister, Sue Hartwig. Defendant testified that Hartwig admitted to her her own guilt in the matter. Furthermore, Sylvia McCracken, defendant's

---

* Circuit judge, sitting on the Court of Appeals by assignment.

mother, testified that Hartwig had been a friend of Cross' for about nine years and that, prior to the date of the offense, she had seen Hartwig sewing and mending men's undershorts. Furthermore, she testified that, approximately one week after defendant was arrested, Hartwig disappeared. Sylvia McCracken also testified that Hartwig made some inculpatory statement to her following defendant's arrest.

Defendant first argues that the trial court erred in refusing to admit the testimony of a particular witness, Attorney James M. Hacker, who would have testified that he had spoken with Sylvia McCracken and Sue Hartwig following the offense. A separate record was created, wherein Attorney Hacker testified that he spoke with McCracken and Hartwig approximately four days after the offense while on business at the probate court. McCracken and Hacker spoke of the offense, with Hacker indicating that it was a serious matter and that he was of the opinion that the authorities were going to arrest defendant and he then went on to question McCracken and Hartwig about what had happened. According to Hacker, Hartwig was unresponsive and she "folded her hands and clasped them in front of her, hung her head, shifted her weight from foot to foot and wouldn't look me in the eye." The trial court ruled Hacker's testimony inadmissible, concluding that the testimony was irrelevant and that it would only serve to have the jury speculate as to the meaning of Hartwig's actions relative to Hartwig's own potential involvement in the offense. On appeal, the parties direct their attention to the question whether the testimony would be admissible under the hearsay rule as being a declaration against penal interest. MRE 804(b)(3). However, we believe that the question whether Hacker's testimony

would fall within that exception to the hearsay rule is irrelevant.

If defendant is correct that Hartwig's conduct constitutes a nonverbal statement which was against her penal interest, then it would follow that that testimony was not inadmissible under the hearsay rule. However, the mere conclusion that the testimony is not precluded by the hearsay rule does not mean that it is otherwise admissible or inadmissible. Similarly, the prosecution bases its argument upon the premise that Hartwig's conduct does not constitute a nonverbal statement and, therefore, the hearsay rule is inapplicable. If true, then the inapplicability of the hearsay rule does not resolve the question whether the evidence is otherwise admissible. It merely causes us to conclude that there was no statement and, therefore, we cannot look to the hearsay rule to determine if the testimony is inadmissible.[1]

Rather, we believe the relevant inquiry is that to which the trial court directed its attention, whether the testimony is relevant. Evidence which is not relevant is not admissible. MRE 402. To be relevant, evidence must have the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401. Similarly, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair

[1] Of course, if we were to reject the prosecutor's argument that the conduct was not a nonverbal statement but accept the argument that the statement was not against penal interest, the testimony would be inadmissible under the hearsay rule. That is, the evidence would be inadmissible if we were to conclude that there was a nonverbal statement but the statement was not against penal interest. However, we need not resolve this inquiry because, if the statement is not against penal interest, then it would also be inadmissible on the grounds of relevancy. Accordingly, we may return to our analysis of the admissibility of the testimony regardless of the determination of the hearsay question.

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403.

In the case at bar, we agree with the trial court that Hacker's testimony is irrelevant. Hacker merely testified that Hartwig acted in a particular manner while the instant offense was being discussed. However, we fail to see how that testimony would prove or disprove defendant's involvement in the instant case. First, it would require speculation to conclude that Hartwig was acting in the manner she was out of guilt, rather than, say, shyness. Furthermore, we, as well as the jury, would also be forced to speculate that Hartwig's "guilty" conduct was based upon knowledge of her own involvement and of defendant's innocence. Hartwig may have been upset with defendant's difficulties with the authorities, or her own guilt, if any, may have been conspiratorial in nature. That is, both defendant and Hartwig may have been involved in the delivery of the controlled substance, thus explaining Hartwig's conduct without exculpating defendant. Absent some foundation to explain why Hartwig acted as she did, her conduct is not relevant inasmuch as it does not tend to prove or disprove defendant's involvement in the offense. Furthermore, even if relevant, we believe it properly excludable on the ground that it would merely serve to confuse or mislead the jury by requiring it to strain to speculate on the meaning of Hartwig's conduct. See MRE 403.[2]

[2] Although not ruled upon by the trial court or discussed by the parties, we would comment that attorney Hacker's testimony might also constitute impermissible testimony by a lay witness. MRE 701. That is, Hacker was not qualified as an expert in the interpretation of body language to indicate guilt or innocence. Accordingly, we are not certain that Hacker could give testimony which, in its essence, was his personal opinion that Hartwig was acting in a guilty manner.

For the above reasons, we conclude that the trial court properly excluded Hacker's testimony.

Defendant next argues that she is entitled to resentencing because the trial court fixed her minimum sentence under the mistaken belief that the Department of Corrections would put her back on the streets in four to six months regardless of the minimum sentence imposed. At sentencing, the trial court made the following statement:

> What's ludicrous about us sitting over here and talking about what minimum sentence should be imposed is I'm sure the State Corrections Department is going to have her out in the streets in four to six months. I'll bet money on it, that they place her in a residential home program, no matter what sentence I give her. If I gave her the maximum on the perjury of ten to fifteen years, if I gave her the maximum on the delivery of Percodan, she is going to be out on the street in four to six months.

At that point, defense counsel suggested that he was not certain if the trial court's comment was correct and went on to ask the judge to exercise compassion. The trial court responded that it was going to impose a sentence that it believed was proper and proceeded to impose consecutive sentences less than the statutory maximum on both the perjury and the drug convictions. After the pronouncement of the sentences, defense counsel inquired of the trial court, by way of clarification, as to whether the sentences were to be concurrent or consecutive and the trial court reconfirmed the sentences were to be consecutive, noting that "she'll still be out in the streets in six months."

Defendant correctly points out in her brief that the trial court was gravely mistaken in its belief that defendant would be eligible for community

placement within four to six months. Rather, defendant will have to serve over seven years in prison under her current sentences before becoming eligible for parole.[3] With respect to community placement before parole, under the most advantageous conditions, she cannot be eligible for community placement until she is within two years of her minimum out-date. See 1987 AACS, R 791.4410(2).[4] Thus, even accepting defendant's calculation of her earliest parole date, which, as noted above, may be overly optimistic, and that she would be eligible for community placement when she becomes within two years of that parole date, defendant will have to serve at least five years, seven months and nineteen days before becoming eligible for community placement. This is far in excess of the trial court's belief that defendant would be placed in the community within four to six months of sentencing.

Furthermore, a sentencing judge may not consider the effects of good-time or disciplinary credits in reaching his sentencing decision. *People v Fleming,* 428 Mich 408; 410 NW2d 266 (1987). Thus, the

---

[3] In her brief, defendant suggests that, even under the most advantagous circumstances in which she earns the greatest amount of good time, special good time, disciplinary credits and special disciplinary credits, she will have to serve a minimum of seven years, seven months and nineteen days before becoming eligible for parole. Our rough calculation suggests that she will have to serve slightly more than that, approximately seven years and eleven months before becoming eligible for parole. See MCL 800.33; MSA 28.1403 for calculation of good time and disciplinary credits. However, the difference in our calculations is not relevent to the question at bar.

[4] Defendant's brief suggests that she could be classified as a drug trafficker and, therefore, would not be eligible for community placement under the terms of Rule 791.4410(1)(c)(v). Although defendant was convicted of delivery of a controlled substance, given the amount involved, we are not convinced that she would be classified as a drug trafficker under the administrative rule. However, it does not affect our analysis whether she is available for community placement two years before her parole date or not. Accordingly, we will assume for the purpose of discussion of this issue that she will be eligible for community placement two years before her earliest parole date.

trial court could not consider when defendant would be eligible for community placement even if its calculations were accurate.

Nonetheless, the troublesome aspect of this case is that it is not entirely clear from the trial court's comments what effect, if any, the trial court's mistaken belief about defendant's eligibility for community placement did, in fact, have on the trial court's sentencing decision. The prosecutor suggests that, because the trial court imposed sentences which were significantly less than the permissible statutory maximum, the trial court's observations concerning Department of Corrections policy were, at most, gratuitous. In other words, the prosecutor contends that what actually occurred was the court sentenced defendant to what it thought was an appropriate term but, at the same time, stated its displeasure with the perceived policy of the Department of Corrections of letting its inmates out of prison too early.

While this contention may be an accurate assessment of the trial court's true thoughts, we are not certain that the sentencing judge's mistaken beliefs concerning defendant's eligibility for community placement had no effect on the court's sentencing decision. That is, the trial court may not have put the appropriate amount of judicial effort into the sentencing decision and carefully weighed the sentencing factors because of its belief that it was essentially irrelevant what sentence was imposed. Even more troublesome is the trial court's statement that it did not matter that defendant received consecutive rather than concurrent sentences because she would be eligible for community placement within six months anyway. If the trial court had properly recognized when defendant became eligible for community placement, it may have more carefully weighed the sentenc-

ing decision and may have chosen concurrent rather than consecutive sentences.

Normally, we would be inclined to remand this matter to give the trial court the opportunity to make a clear record on whether it considered the issue of community placement in reaching its sentencing decision. However, since we will conclude in the next issue that resentencing is necessary because of a misscoring of the sentencing guidelines, we believe it most appropriate to leave the current issue unresolved. Rather, we direct the trial court on resentencing not to base its sentencing decision upon the mistaken belief that defendant would be eligible for community placement within six months,[5] nor to consider the effects of good-time and disciplinary credits as directed by *Fleming, supra.*

Turning to the scoring question, defendant argues that she was improperly assessed four points for Offense Variable 8 on the Sentencing Information Report. The instructions for the scoring of Offense Variable 8 are as follows:

O.V. 8 PROFESSIONAL/ORGANIZED CRIME OR RING

4=offender is a member of professional/organized crime or ring

---

[5] We recognize that the trial court's comments may reflect not a lack of correct information concerning the statutes and regulations governing community placement, but of a cynical view of the Department of Corrections' observance of those laws and regulations. That is, the trial court might be basing its decision or comments on the belief that correction officials place convicts in community placement programs prior to becoming eligible under the applicable regulations. Even if this is true, it is not appropriate for the trial court to speculate on such conduct by the corrections department and alter its sentencing patterns based upon such beliefs. Rather, the trial court must sentence based upon the belief that the department properly follows the applicable statutes and regulations and leave it to the appropriate officials to enforce those statutes and regulations if the corrections department does, in fact, violate them. See *Fleming, supra.*

0=no membership by offender

Instructions:

A. Score "4" if the offense is part of a pattern of criminal activities over a period of time from which the offender has derived a substantial portion of his or her income and/or if the instant offense is directly related to membership in an organized criminal group.

B. The degree of sophistication of the group is not so important as is the fact of existence, which can in part be inferred from the length of time the organization has been in operation.

C. This may include a juvenile gang.

D. Presence of multiple offenders should not automatically be defined as constituting an organized criminal group.

This Court discussed the appropriate manner in which to score Offense Variable 8 in *People v Emma Johnson,* 144 Mich App 497, 501; 376 NW2d 122 (1985), where the defendant was convicted of an offense falling under the fraud category of the sentencing guidelines:

From reading this offense variable, we find that there are two separate means of arriving at a score. First, the court must decide whether the defendant "derived a substantial portion of his or her income" from the criminal activities involved. Second, the court must decide whether "the instant offense is directly related to membership in an organized criminal group". If either the first or the second prong, or both, is found to be true, then the court assesses 4 points against the defendant under o.v. 8. Furthermore, because the judge must actually consider whether "the offense is part of a pattern of criminal activities over a period of time . . . ", Fraud o.v. 8 permits the sentencing judge to consider other criminal activity for which no conviction resulted so long as the information

regarding this activity is accurate, not objected to, and is related to the present offense.

We begin by noting that defendant has properly preserved the scoring issue by bringing an "effective challenge" in the trial court at the time of sentencing, thus shifting the burden to the prosecution to prove by a preponderance of the evidence that the facts are as the prosecution asserts in support of the scoring. *People v Walker,* 428 Mich 261, 268; 407 NW2d 367 (1987). However, where the record of the trial or of the plea proceeding contains evidence supporting or opposing a proposed decision in the scoring of a variable, the scoring of that variable is within the discretion of the sentencing judge in deciding whether to entertain further proofs. *Id.* We agree with defendant that the prosecution has not established the appropriate factual basis for assessing four points under Offense Variable 8. At sentencing, the probation officer was present and explained the scoring of the offense variable. He based the assessment of four points on the fact that there allegedly was a highly organized ring distributing drugs and that defendant had an intimate, longstanding association with the alleged ringleader, Thomas Cross, and noted that the grand jury had indicted her not only for perjury but also conspiracy to deliver cocaine and the delivery of cocaine. Those two drug offenses were dismissed as part of the plea bargain of the perjury count.

While it might be true that there was an organized drug ring of which defendant's boyfriend was the leader, we are aware of no evidence, nor was any such evidence presented at sentencing, that defendant derived a substantial portion of her income from her activities in that drug ring. More importantly, as defendant has continually stressed,

defendant's current conviction does not arise as part of her membership in the drug ring. That is, defendant's current conviction is not for the delivery of a controlled substance to a customer but from a noncommercial transaction in which she delivered the controlled substance to her boyfriend while he was incarcerated. Thus, any membership by defendant in an organized crime ring is irrelevant to the instant offense.

Since the prosecution did not bring forth any evidence at sentencing that defendant derived a substantial portion of her income from her membership in this alleged crime ring and because defendant's membership in the ring, if she was a member, was not directly related to the instant offense, the assessment of four points under Offense Variable 8 was inappropriate. Moreover, we reject the prosecutor's argument that any error in the scoring of the SIR is harmless since the trial court departed from the recommendation of the sentencing guidelines. While it is true that the trial judge departed from the sentencing guidelines, we cannot conclude that the error in the scoring of the guidelines was harmless. Had the guidelines been accurately scored, resulting in a lower recommendation under the guidelines, the trial court may well have imposed a lower sentence, even though that sentence might also have departed from the recommendations. That is, while the trial court might believe that a departure from the guidelines is called for in the instant case, the correct recommendation of the guidelines might nevertheless influence the size of the departure and the actual sentence imposed. Accordingly, we conclude that resentencing is in order.

For the above reasons, we affirm defendant's conviction but remand the case for resentencing at which the trial court shall consider a properly

scored SIR and shall not consider its beliefs as to Department of Corrections policy regarding community placement. We further direct that the matter be assigned to a different judge for resentencing. We do not retain jurisdiction.

KELLY, J. *(concurring)*. The trial court's observation concerning the Department of Corrections' policies and practices reminds me of Sir Winston Churchill's reference to the unpredictability of Russian action: "It is a riddle wrapped in a mystery inside an enigma." [Speech in London, October 1, 1939]. It is incredible to me that the courts keep slipping and sliding over this greasy terrain without any reliable road map. The Department of Corrections is not accountable to the courts and the Legislature founders between its publicized penchant for protecting the public and its unwillingness or inability to provide penitentiary facilities that measure up to the responsibility.

In other words, I do not fault the trial judge for his gratuitous incorrect observations. I am sure he had sufficient provocation for a few acerbic observations.