# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MEGAN ASHLEY CULVER,

       Defendant-Appellant.

UNPUBLISHED
June 19, 2018

No.  336470
Livingston Circuit Court
LC No.  16-023506-FH

Before:  CAMERON, P.J., and METER and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right her jury conviction of embezzlement of $1,000 or more but less than $20,000, MCL 750.174(4)(a).  The trial court sentenced defendant to 30 days in jail and two years of probation.  We affirm.

This case arose from defendant's fraudulent use of a restaurant's loyalty-rewards program.  By erroneously recording the transactions she made with customers as a server, defendant embezzled approximately $5,600 from her employer, the Downtown Main Martini Bar in Brighton.

Defendant worked as a server at the restaurant from July 2015 until her termination in January 2016.  Nick Palizzi, who together with his wife owned the bar, was alerted to defendant's embezzlement scheme when he found "irregularit[ies] of some kind on [defendant's] report," because her "loyalty transactions seemed higher than . . . I would expect."  The restaurant management printed a report of food and beverage sales and customer payments at the end of each night.  Transactions at the restaurant were tracked through a point-of-sale (POS) system on computer terminals in the restaurant.  After a customer's order was entered into the POS system by a server, a server could pick up the food or beverages.  The system also tracked payments for each transaction, and whether the customer paid with a credit card, cash, or a loyalty-rewards account balance.  The restaurant's rewards program credited customers 10% of their bill for use on their next restaurant bill.

Palizzi testified that after noticing abnormalities in defendant's report, he pulled reports for each day defendant worked, and noticed that "it seemed to be a pattern where [her rewards transactions] were consistently high."  Defendant had entered 258 loyalty transactions in the POS system during her employment, and "[t]he quantity of loyalty transactions run by [defendant]

-1-

was exorbitantly higher than any other server." Over the same period, the other twelve servers in the restaurant each entered between 6 and 26 loyalty transactions. Palizzi speculated that defendant was "ringing" received cash as loyalty rewards and was keeping the cash for herself.

Defense counsel argued at trial that another individual may have entered the improper loyalty-rewards transactions into the system under defendant's name. Counsel also averred that Detective Mike Arntz should have conducted a more thorough investigation into other suspects. Outside the presence of the jury, defense counsel sought to offer evidence regarding another employee of the Downtown Main Martini Bar who had a previous 2012 embezzlement conviction involving a previous employer. Counsel stated that the purpose of the proffered evidence was its relevance to the thoroughness of Detective Arntz's investigation. Counsel argued that the jury should know that a coworker who worked during the same period as defendant had been convicted of embezzlement. The prosecution argued that if defense counsel were allowed to introduce this conviction, it would in effect improperly impeach the coworker with bad-acts evidence and suggest that her previous conviction meant that she had committed the subject embezzlement. The court ruled that counsel could ask the detective whether he had performed a thorough investigation and whether he had investigated any of defendant's co-workers, but the court disallowed any mention of the coworker's conviction. The court stated: "I'm not going to permit that prior act of some non-charged person to . . . be brought in," indicating that the conviction was "[t]oo far back, not related to this place and . . . not related to this . . . event, not close enough in time. I think it would be more distracting than probative."

Defense counsel moved for a mistrial based on the exclusion of the evidence, and the court denied defendant's motion.

In front of the jury, defense counsel asked Detective Arntz whether he had investigated anyone else at the restaurant for embezzlement, running through a list of employee names, including the coworker with the prior embezzlement conviction. Arntz stated that he did not investigate any of defendant's coworkers and that his investigation involved only the evidence presented to him by Palizzi and his own interview of defendant. Defense counsel argued in part during her closing argument that Detective Arntz's investigation was incomplete because he did not perform a criminal background check on anyone at the restaurant.

Defendant first argues that the trial court erred in denying her requests to admit evidence of the coworker's previous conviction for embezzlement. In general, we review a decision to admit or exclude evidence for an abuse of discretion. *People v Watson*, 245 Mich App 572, 575; 629 NW2d 411 (2001). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the principled range of outcomes, *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003), and "the trial court's decision on a close evidentiary question . . . ordinarily cannot be an abuse of discretion," *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000).

Defendant posits that the court's ruling implicates his right to present a defense and was an error so severe that it implicates due process rights, triggering the harmless-beyond-a-reasonable-doubt standard of review set forth in *Chapman v California*, 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967). Whether a defendant was denied a constitutional right to present a defense is reviewed de novo. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

Defendant argues that evidence of the previous conviction should have been admitted under the "reverse Rule 404(b)" doctrine. In support of her position, she relies on cases from outside of Michigan and cases from the United States Sixth Circuit Court of Appeals. "[T]here is no consensus among the circuits on what standard to use for admitting [reverse 404(b)] evidence." Comment, *Reverse 404(B) Evidence: Exploring Standards When Defendants Want To Introduce Other Bad Acts of Third* Parties, 79 U Colo L Rev 587 (2008). "Some [courts] consider the same strict requirements as are used to admit standard 404(b) evidence, while others seem to disregard the requirements of the rule altogether in order to give the defendant the best opportunity to present a complete defense." *Id*.

The Seventh Circuit has explained that "Rule 404(b) of the Federal Rules of Evidence is typically used by prosecutors seeking to introduce evidence of a criminal defendant's prior misconduct as proof of motive or plan to commit the crime at issue." *United States v Seals*, 419 F3d 600, 606 (CA 7, 2005). The court continued, "However, a defendant can seek to admit evidence of other crimes under this rule if it tends to negate the defendant's guilt of the crime charged against him." *Id*. "This is commonly referred to as reverse 404(b) evidence." *Id*. "In determining whether to admit reverse 404(b) evidence, a district court must balance 'the evidence's probative value under Rule 401 against considerations such as prejudice, undue waste of time, and confusion of the issues under Rule 403.' " *Id*., quoting *United States v Reed*, 259 F3d 631, 634 (CA 7, 2001). The *Seals* court stated, "We adopted this rule from a decision by the Third Circuit, *United States v Stevens*, 935 F2d 1380 (CA 3, 1991), which distinguished between the standards that govern admissibility of standard 404(b) evidence and reverse 404(b) evidence." *Seals*, 419 F3d at 606. "*Stevens* held that 'a lower standard of similarity should govern reverse 404(b) evidence because prejudice to the defendant is not a factor.' " *Id*., quoting *Stevens*, 935 F2d at 1404. The *Seals* court also stated, "Although we appreciate the fact that the legal standard for admitting reverse 404(b) evidence is relatively lenient, the evidence must still be relevant." *Seals*, 419 F3d at 607.

The propriety of a defendant using MRE 404(b) to offer other-acts evidence about a third party was addressed in *People v Catanzarite*, 211 Mich App 573, 579; 536 NW2d 570 (1995), wherein this Court concluded that a defendant may introduce prior bad acts of a third party who is not a codefendant or a witness.[1] Also, in *People v Rockwell*, 188 Mich App 405, 409-410; 470

---

[1] In *Catanzarite*, this Court stated:

> This Court has previously held that MRE 404(b), now 404(b)(1), applies to the admissibility of evidence of other acts of any person, such as a defendant, a victim, or a witness. Paul Spikes, however, was neither a codefendant nor a witness. Although there are no Michigan cases on point, the Ninth Circuit Court of Appeals has held that FRE 404(b) permits an accused to introduce "other crimes, wrongs, or acts" of a third party, noting that the rule on its face applies to "a person," and is not limited to the defendant. MRE 404(b)(1), which is virtually identical to FRE 404(b), also on its face applies to "a person." Therefore, we are persuaded by these decisions that a defendant may introduce prior bad acts of a third party. [*Catanzarite*, 211 Mich App at 579 (citations omitted).]

NW2d 673 (1991), this Court noted that MRE 404(b)(1) applies to the admissibility of evidence of other or bad acts of any person, not just the defendant. The panels in these cases did not address whether a lower admissibility standard under the balancing test of MRE 403 should apply as compared to a "standard" case involving MRE 404(b).[2] However, we conclude that the evidence at issue here would prove inadmissible regardless of whether a higher or lower standard is used. In other words, even if we apply the standards proposed by defendant in her appellate brief, we find no basis for reversal.

MRE 404(a) governs the situations wherein evidence may be offered with respect to one's character. It is not at issue here. MRE 404(b) governs the admission of other crimes, wrongs, or acts, and provides in part:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of *a person* in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such claims are contemporaneous with, or prior or subsequent to the crime charged in the case. [MRE 404(b)(1) (emphasis added).]

These factors are not exclusive; the key is that the evidence be offered for purposes other than to show that a person acted in conformity with their prior bad act. *Sabin (After Remand)*, 463 Mich at 56.

In *People v Bergman*, 312 Mich App 471, 493; 879 NW2d 278 (2015), citing *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), the Court stated: "Evidence of other crimes or bad acts is admissible when it is offered for a proper purpose, MRE 404(b)(1); it is relevant under MRE 402; and its probative value is not substantially outweighed by unfair prejudice, MRE 403." Defendant sought to introduce evidence of the previous conviction to show that Detective Arntz was not thorough in his investigation and to show the existence of an alternative suspect. While it could be argued that using the prior conviction to show that the coworker was a suspect would be an improper purpose (i.e., would show that the coworker acted in conformity with her character of being an embezzler), the evidence was arguably being offered to show that defendant was not the embezzler and to show that an investigation was not thorough. The first prong as discussed in

---

[2] In her appellate brief, defendant contends that a less-stringent standard should apply because "the prejudice aspect in 403 balancing is much diminished in [the] context" of reverse 404(b) evidence and because "the standard of admissibility when a criminal defendant offers [bad-acts] evidence as a shield need not be as restrictive as when the prosecutor uses such evidence as a sword." (Quotation marks and citation omitted.)

*Bergman* was therefore arguably satisfied.[3]   However, the conviction would only have been admissible as relevant under MRE 402 if, under MRE 401, it had "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

This Court has previously held that evidence that tends to incriminate another person is not admissible if it creates no more than a mere suspicion that another person was actually the perpetrator of the alleged crime. *People v Kent*, 157 Mich App 780, 793; 404 NW2d 668 (1987). In *Kent, id.* at 783, the defendant was charged with involuntary manslaughter and arson of a dwelling house for setting a trailer on fire.  He sought to introduce evidence of another fire on the same night that a third party would have had a motive to set; he was trying to suggest that the third party was responsible for both fires and argued that the exclusion of the evidence deprived him of his right to present a defense. *Id.* at 792-793.  The Court addressed this as an evidentiary issue, and concluded that to admit evidence of other similar crimes to cast doubt on a defendant's guilt by implicating another, there would have to be more than a mere suspicion that the same person was responsible for both crimes and that the person was not the defendant. *Id.* at 793. The Court opined that the trial court "did not abuse its discretion in determining that evidence of the other fire was too remote to be probative." *Id.*

In *People v McCracken*, 172 Mich App 94, 98-99; 431 NW2d 840 (1988), this Court upheld a trial court's determination to exclude evidence pertaining to third-party culpability because it was merely speculative.  In that case, the defendant claimed ignorance and sought to implicate her sister when oxycodone was found in a bag of clothes that the defendant had delivered to a jail inmate. *Id.* at 96.  She sought to introduce the testimony of an attorney who had informed the sister that the defendant would likely be arrested; when the attorney asked the sister what happened, she " 'folded her hands and clasped them in front of her, hung her head, shifted her weight from foot to foot and wouldn't look [the attorney] in the eye.' " *Id.* at 97. This Court concluded that the evidence was not relevant because

> it would require speculation to conclude that [the sister] was acting in the manner she was out of guilt, rather than, say, shyness.  Furthermore, we, as well as the jury, would also be forced to speculate that [her] "guilty" conduct was based upon knowledge of her own involvement and of defendant's innocence.  [The sister] may have been upset with defendant's difficulties with the authorities, or her own guilt, if any, may have been conspiratorial in nature.  That is, both defendant and [the sister] may have been involved in the delivery of the controlled substance, thus explaining [the sister's] conduct without exculpating defendant.  Absent some foundation to explain why [the sister] acted as she did, her conduct is not relevant inasmuch as it does not tend to prove or disprove defendant's involvement in the offense.  Furthermore, even if relevant, we believe it properly

---

[3] Because we accept, for purposes of argument, that the "proper purpose" element was satisfied, we need not address defendant's implication that only the relevancy and balancing tests should be applied in the case of reverse 404(b) evidence.

excludable on the ground that it would merely serve to confuse or mislead the jury by requiring it to strain to speculate on the meaning of [the] conduct. [*Id.* at 99.]

That defendant's coworker was convicted of embezzlement in 2012 and worked at the same establishment as plaintiff might have created a suspicion that she was somehow involved in the embezzlement at issue. However, defendant proffered no information beyond her mere suspicion that would have allowed for a finding that it was more probable that the coworker was the perpetrator. In failing to point to any evidence beyond the prior conviction, e.g. data from the POS system that might have implicated the coworker, defendant has offered nothing more than mere speculation that the coworker might have been the culprit and that the investigation was compromised. This type of speculative evidence is impermissible.

The coworker's conviction would only have been relevant to the thoroughness of Detective Arntz's investigation if her conviction would have made it more or less probable that Arntz made an incomplete investigation. The conviction would only make an incomplete investigation more probable if it suggested that the coworker committed the present embezzlement. Defendant did not provide the trial court with this necessary factual predicate. Further, the trial court properly took the remoteness of the previous conviction into consideration when it considered the logical relevance of the evidence. That there were approximately four years between the prior conviction and the present embezzlement suggests that the failure to investigate had little bearing on the thoroughness of Detective Arntz's investigation.

Quite simply, defendant was not able to provide any link between the prior embezzlement and defendant's crime. While defendant implied that the coworker or someone else could have entered the improper loyalty-rewards transactions into the system under her name, she proffered nothing more than a suspicion. Even if a four-year-old conviction raised a *suspicion* or gave rise to *speculation* regarding some connection between it and the present crime, there was nothing more to establish any connection between the prior conviction and the present crime. Moreover, it is unclear what could have been investigated here that would have given rise to a suspect other than defendant.

Further underscoring the propriety of excluding the prior conviction is the fact that defendant was allowed to question Detective Arntz about the thoroughness of his investigation without introducing this evidence. Defense counsel asked Detective Arntz whether he investigated anyone else at the restaurant for embezzlement, running through a list of employee names, including the subject coworker. Arntz stated that he did not investigate any of defendant's coworkers. Detective Arntz stated that he only used the evidence presented to him by Palizzi and his own interview of defendant to conduct his investigation. These questions would have allowed the jury to infer that Detective Arntz performed an incomplete investigation, and infer that there were alternative suspects that he should have interviewed. Thus, defendant was not deprived of this defense. The jury declined to make the inferences despite being provided with the opportunity to do so. The jury's ultimate decision evidences the conclusion that the jury thought Detective Arntz's investigation was thorough enough to convict defendant.

In sum, even when applying the standards that defendant asks us to apply, we find no basis on which to reverse the trial court's ruling excluding the evidence in question.

Defendant next argues that the prosecutor committed prosecutorial error, and that she received ineffective assistance when her counsel failed to address it.

Because there was no objection to the alleged instances of prosecutorial error, this issue is unpreserved. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). To obtain relief, defendant must show, at a minimum, that (1) there was error, (2) it was plain, and (3) the plain error affected the outcome of the proceedings. *People v Wyngaard*, 462 Mich 659, 668; 614 NW2d 143 (2000).

Defendant also failed to preserve the ineffective-assistance claim by moving for a new trial; accordingly, review is limited to mistakes apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's "factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *Matuszak*, 263 Mich App at 48.

The test for prosecutorial error is whether the defendant was denied a fair and impartial trial. *Brown*, 294 Mich App at 382. The issues are decided on a case-by-case basis, "and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Id*. at 383.

Defense counsel asserted during her closing argument that Detective Arntz's investigation was incomplete because he did not look into alternative suspects or perform a criminal-background check on anyone at the restaurant. In rebuttal, the prosecutor responded that Arntz could (OR WOULD? CHECK) have been charged with a misdemeanor for running checks on other employees through the Law Enforcement Information Network (LEIN) and that defense counsel should have known about this restriction on accessing LEIN information. Defense counsel did not object. Defendant argues that this comment was misleading and that in making the argument, the prosecutor misrepresented the law because Arntz was authorized to investigate restaurant employees. However, defendant has not established plain error requiring reversal.

The comment was responsive to defendant's argument questioning the thoroughness of the police investigation. Prosecutorial remarks generally do not require reversal if they are responsive to issues raised by defense counsel. *People v Duncan*, 402 Mich 1, 16; 260 NW2d 58 (1977). We acknowledge, however, that the police might well have had good cause to run background checks on other employees in the course of their investigation and that the prosecutor's remarks were not entirely proper. But the prosecutor's argument, viewed as a whole, was that there simply were no other viable suspects; he stated at the end of his rebuttal argument that the "evidence only points in one direction." Moreover, the judge's instruction that arguments of attorneys are not evidence helped to dispel any prejudice, *People v Green*, 228 Mich App 684, 693; 580 NW2d 444 (1998), and even assuming the existence of a plain error, we cannot find that the prosecutor's comment affected the outcome of the proceedings, *Wyngaard*, 462 Mich at 668. Under all the circumstances, we find no basis for reversal.

Defendant argues that her counsel was ineffective because she failed to raise an objection to this comment. Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. See *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). This Court will not substitute its judgment for that of counsel regarding matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Counsel's conduct did not fall below an objective standard of reasonableness. Indeed, counsel may have determined that clarifying what the LEIN statute states about accessing information would have had a potentially negative impact on the defense in that it might have allowed for reiteration of the point that further LEIN checks were not performed because there were no other serious suspects. Thus, the failure to object may have been strategic. It is also unclear, from the bare allegations defendant advances, how the outcome of her trial was affected by the prosecutor's comment or her counsel's decision to not object. Defendant has not demonstrated that she received ineffective assistance of counsel.

Affirmed.

/s/ Thomas C. Cameron
/s/ Patrick M. Meter
/s/ Stephen L. Borrello