PEOPLE v POLUS

Docket No. 141836. Submitted September 23, 1992, at Grand Rapids.
    Decided December 7, 1992, at 9:10 A.M. Leave to appeal sought.
  Tommy R. Polus pleaded guilty in the Berrien Circuit Court,
    Casper O. Grathwohl, J., of third-degree criminal sexual con-
    duct and was sentenced to six to fifteen years' imprisonment.
    He appealed, claiming that the trial court erred in computing
    the sentence recommended by the sentencing guidelines when
    it assessed fifty points under Offense Variable 12 for multiple
    penetrations of the victim.
      The Court of Appeals *held:*
      The instructions of the sentencing guidelines for Offense
    Variable 12, Criminal Sexual Penetration(s), direct a trial court
    sentencing a defendant for a conviction of criminal sexual
    conduct to score fifty points for two or more penetrations of the
    victim that arise out of the same criminal transaction and
    twenty-five points for one penetration of the victim that arises
    out of the same criminal transaction. With regard to convic-
    tions of first-degree or third-degree criminal sexual conduct, the
    instructions direct the trial court not to score the one penetra-
    tion that forms the basis of the conviction.
      In this case, the trial court erred in assessing points on the
    basis of sexual penetrations that occurred in transactions other
    than the one that led to the defendant's conviction. Remand is
    required for rescoring of Offense Variable 12. Resentencing is
    required only if the trial court decides to impose a different
    sentence.
      Remanded.
      GRIFFIN, J., dissenting, stated that scoring decisions under
    the sentencing guidelines must be accorded limited appellate
    review and be upheld if, as in this case, there is evidence to
    support them; that, pursuant to *People v Warner,* 190 Mich
    App 26 (1991), points under Offense Variable 12 may be as-
    sessed for penetrations that are part of a pattern of repeated
    sexual molestation of the victim by the defendant; and that the

REFERENCES
Am Jur 2d, Criminal Law § 527; Rape § 114.
See the ALR Index under Rape; Sentence and Punishment.

sentence is proportionate to the circumstances surrounding the offense and the offender.

Rape — Sentences — Sentencing Guidelines — Offense Variables — Sexual Penetration.

In computing a sentence recommended under the sentencing guidelines for a defendant convicted of criminal sexual conduct, points under the offense variable relating to the number of penetrations are to be assessed only for penetrations that arose out of the criminal transaction that led to the defendant's conviction.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Dennis M. Wiley,* Prosecuting Attorney, and *Arthur J. Cotter,* Assistant Prosecuting Attorney, for the people.

*William D. Renner, II,* for the defendant on appeal.

Before: Sawyer, P.J., and Murphy and Griffin, JJ.

Sawyer, P.J. Defendant pleaded guilty of criminal sexual conduct in the third degree. MCL 750.520d; MSA 28.788(4). He was sentenced to serve a term of six to fifteen years in prison. He now appeals and we remand.

Defendant raises a number of issues related to his sentencing, one of which is dispositive. Defendant argues that the trial court erred in assessing fifty points in the scoring of Offense Variable 12 in the sentencing guidelines. We agree. The scoring of fifty points for Offense Variable 12 is appropriate where there are two or more criminal sexual penetrations, not including the penetration that forms the basis of the conviction.[1] The instructions

[1] Twenty-five points are to be scored if there is one criminal sexual penetration in addition to the penetration that forms the basis of the conviction, and zero points are to be scored if there is no criminal sexual penetration in addition to the penetration that forms the basis of the conviction.

for Offense Variable 12 also direct the trial court to "[s]core all penetrations involving the offender arising out of the same criminal transaction." The trial court scored fifty points for multiple penetrations on the basis of evidence that defendant had engaged in numerous sexual penetrations of the victim over the course of months, perhaps years, preceding his conviction. The trial court concluded that it was appropriate to consider those prior penetrations in scoring Offense Variable 12. We disagree.

As noted above, the instructions for Offense Variable 12 direct the trial court to score the penetrations that arise out of the "same criminal transaction." We read that instruction as limiting the trial court's consideration in scoring Offense Variable 12 to only those penetrations that occurred during the criminal transaction for which the defendant was convicted, and not to include possible prior criminal sexual penetrations that arose from separate criminal transactions involving the defendant and the victim. That is, Offense Variable 12 is designed to distinguish between rapes in which the defendant penetrates the victim only once during the course of the rape and rapes in which the defendant penetrates the victim more than once during the course of the same rape. In the case at bar, the only indication is that the defendant penetrated the victim once during the course of the rape for which he was convicted. While it may well be that defendant raped the victim on several prior occasions, that fact is not relevant to the proper scoring of Offense Variable 12.

Furthermore, we should point out that these prior criminal sexual penetrations are considered in the scoring of the sentencing guidelines. Offense Variable 25 addresses the issue of contemporane-

ous criminal acts, with fifteen points being assessed for three or more contemporaneous criminal acts and five points being assessed for two contemporaneous criminal acts. Furthermore, the instructions for Offense Variable 25 define a criminal act to be contemporaneous if it occurs within twenty-four hours of the offense for which the defendant is being sentenced or within six months if it is identical or similar in nature to the offense for which the defendant is being sentenced. In either case, the contemporaneous criminal act cannot have resulted in a separate conviction. Indeed, defendant was assessed fifteen points under Offense Variable 25 for his prior conduct with the victim.[2]

We should also point out that merely because defendant's prior conduct with the victim is not to be considered in the scoring of Offense Variable 12, it does not mean that the trial court must ignore that conduct. In addition to the fact that the conduct is relevant in the scoring of Offense Variable 25, it is certainly appropriate for the trial court to consider defendant's ongoing criminal conduct with the victim in determining the appropriate sentence to impose. That is, the trial court may certainly consider that prior conduct in determining whether to sentence within the guidelines or depart from the guidelines, as well as where to sentence within the guidelines or how much to depart from the guidelines. Rather, we merely hold that the prior conduct cannot be used in the scoring of Offense Variable 12 to determine what is the base guidelines recommendation.[3]

---

[2] To the extent that defendant also argues in his brief that the trial court erred in the scoring of Offense Variable 25, we reject that argument.

[3] We reject the argument by the prosecutor that *People v Warner,* 190 Mich App 26; 475 NW2d 397 (1991), controls this case. While

For the above reasons, we conclude that the trial court erred in its scoring of Offense Variable 12 and that the error affects the recommendations of the sentencing guidelines.

However, there remains the question of the appropriate remedy. While we conclude that the guidelines were incorrectly scored, it does not necessarily follow that the trial court would impose a different sentence.[4] Accordingly, the proper remedy is to remand the matter to the trial court for the limited purpose of determining if its sen-

*Warner* does arguably support the proposition that prior conduct between the defendant and the victim may be considered in the scoring of Offense Variable 12, we conclude that *Warner* does not control the case at bar because any such conclusion is mere dicta. While the trial court in *Warner* did consider prior conduct in the scoring of Offense Variable 12, and this Court upheld the trial court's scoring of the guidelines, the *Warner* decision never explicitly addressed the question whether prior conduct is appropriate in considering the scoring of Offense Variable 12. Rather, the question addressed by the Court in *Warner* was whether the trial court could properly consider uncontroverted evidence in a presentence report in establishing the scoring of the sentencing guidelines. Furthermore, the *Warner* Court noted that it would not remand the matter for resentencing even if it were to find that the trial court had improperly scored Offense Variable 12 on the basis of the trial court's comments at sentencing. Finally, this Court even further noted that the sentencing guidelines did not apply because the defendant was convicted as a second-time sexual offender, thus making him a habitual offender and rendering the guidelines inapplicable. For these reasons, we conclude that *Warner* cannot be read as establishing a rule that prior criminal sexual conduct can be considered in the scoring of Offense Variable 12.

[4] Defendant also argues that his sentence is disproportionate under *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), and that the trial court failed to adequately consider rehabilitation and failed to individualize the sentence to him. However, we are satisfied that, except for the scoring issue, the trial court considered the proper factors and that the sentence, even in light of the changed scoring, under which the recommended minimum would be in the two- to five-year range, is proportionate to this offense and this offender. We decline, however, to merely affirm the sentence, because it is for the trial court, not this Court, to exercise sentencing discretion. Thus, the trial court might conclude that a lesser sentence is appropriate in light of the changed guidelines scoring. That is, while we believe it would be proper for the trial court to retain the current sentence, it is not our place to prevent the trial court from reducing the sentence if it deems reduction appropriate.

tence would be changed in light of the correct scoring of the guidelines. If the trial court determines that it would impose a different sentence, it shall bring defendant before the court for resentencing. However, if the trial court determines that it would have imposed the same sentence even under the correctly scored guidelines, it may enter an order affirming its original sentence without the need of bringing defendant before the court.

Turning to the points raised in the dissent, our dissenting colleague suggests that we have "unwarily become bogged down in second guessing the trial court's scoring" of the guidelines. *Post* at 205. We assure our colleague that we are quite wary of involvement in sentencing guidelines review. Our colleague further suggests that we are eager to overrule the trial court's scoring decision and that we have ignored the limited nature of the review of guidelines scoring. *Id.* However, we are neither eager to overrule the trial court's scoring decision nor oblivious to the limited nature of appellate review of scoring decisions.

We are convinced, however, that the trial court erred in scoring the sentencing guidelines, even in view of the great deal of latitude that must, and should, be afforded sentencing judges in scoring the guidelines. Further, our colleague, while extolling the limited nature of sentencing guidelines review, seems to conveniently overlook the fact that appellate courts do have the authority, indeed the responsibility, to review the trial court's scoring of the guidelines. See *People v Walker,* 428 Mich 261, 268; 407 NW2d 367 (1987). The dissent's myopic approach to guidelines review would suggest that we should turn a blind eye to a trial court's scoring decision, regardless of how outrageous or erroneous it is. Absent appellate review, a

sentencing judge could arbitrarily score points to achieve a desired sentence recommendation. While the trial court in this case undoubtedly acted in good faith, the scoring was nevertheless erroneous.

Moreover, while we must afford the sentencing judge a great deal of discretion in scoring, if we fail to intervene where that scoring is erroneous, the guidelines will be rendered meaningless. The guidelines serve to help ensure that similar offenders receive similar sentences for committing similar offenses. Without some uniformity in scoring the guidelines, the guidelines lose their purpose. In other words, each variable in the guidelines comes with instructions for a reason, and it is our responsibility to ensure that those instructions are followed.

Next, the dissent relies on unpublished decisions in support of the authority of *People v Warner,* 190 Mich App 26; 475 NW2d 397 (1991). Our dissenting colleague overlooks the fact that unpublished decisions lack value as precedent. MCR 7.215(C)(1). Regardless of how many unpublished opinions have followed *Warner,* that does not change the fact that *Warner* on this point is both dicta and wrong. Regarding the former point, this Court has already established that we are not obligated under Administrative Order No. 1990-6, 436 Mich lxxxiv; Mich Ct R, A 1-45, to follow dicta. *People v Cooke,* 194 Mich App 534, 537-538; 487 NW2d 497 (1992). Concerning the second point, it is our obligation to correctly apply the law, not blindly follow past erroneous decisions.

We are puzzled by the dissent's discussion of *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). The dissent seems to overlook the fact that we, too, are satisfied that the sentence imposed is proportionate. However, unlike the dissent, we are not prepared to conclude that the trial court in

this matter has abandoned its responsibility to sentence in light of the (proper) guidelines recommendation. While we are satisfied that the trial court could properly reaffirm the sentence imposed, we are not so presumptuous as to conclude that it will. The trial court did not respond to defendant's challenge to the scoring by indicating that it would impose the same sentence. The trial court might conclude that a lesser sentence is appropriate in light of the revised scoring. It is the trial court's prerogative to make that determination, not ours. We are not, as the dissent suggests, requiring the trial court to again march "up the sentencing hill." Rather, we are affording the trial court the opportunity to determine if another trip up that hill is called for in light of the changed sentencing guidelines.

Our esteemed colleague in dissent waxes poetic in describing how deplorable is defendant's crime and how deserving defendant is of punishment. This, however, is a straw man because there is no question that defendant's crime is deplorable or that he is deserving of punishment. We, however, observe a rule of law, not emotion. For a punishment to be just, it must be fairly imposed according to the rule of law. When a defendant commits horrendous crimes, the temptation is great to conclude that the defendant is undeserving of fair treatment. However, our constitution demands that all receive fair treatment, and we, as judges, are charged with the responsibility to resist that temptation and ensure that all are treated fairly. Thus, the dissent's rhetoric focuses on a specious argument: that defendant's conduct deprives him of the right to fair treatment by the criminal justice system.

Few crimes are more deserving of punishment than that committed by defendant. It is our obliga-

tion, however, to impose that punishment fairly and justly. A basic premise in doing so is that the sentencing judge imposes sentence on the basis of accurate information and accurately scored guidelines.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

MURPHY, J., concurred.

GRIFFIN, J. *(dissenting).* I respectfully dissent. The majority has unwarily become bogged down in second-guessing the trial court's scoring of the sentencing guidelines. The eagerness of the majority to overrule the scoring decision made by the sentencing judge is contrary to our limited standard of review. *People v Clark,* 147 Mich App 237; 382 NW2d 759 (1985). The Sentence Review Committee established by the Supreme Court to study implementation of the sentencing guidelines recommended "very limited" appellate review of scoring decisions. Specifically, the Sentence Review Committee Report states:

> Thought must also be given to the question of how to respond when the parties request the Court of Appeals to review the scoring decisions which the trial court must make to arrive at the guideline sentence. The committee believes that it is absolutely crucial that the Court of Appeals never get bogged down in a close review of these many scoring decisions. The committee therefore believes very strongly that the underlying factual findings which the sentencing judge may have to make must be upheld if there is any evidence to support them. [Sentence Review Committee Report and Recommendation, p 30 (July, 1982).]

In *People v Warner,* 190 Mich App 26, 27; 475 NW2d 397 (1991), we reiterated:

Appellate review of the guidelines calculations is very limited. *People v Reddish,* 181 Mich App 625, 628; 450 NW2d 16 (1989). A sentencing judge has discretion in determining the number of points to be scored provided that evidence exists adequate to support a particular score. *People v Day,* 169 Mich App 516, 517; 426 NW2d 415 (1988). The Sentence Review Committee strongly recommends that this Court uphold scoring decisions for which any support exists. *People v Richardson,* 162 Mich App 15, 17; 412 NW2d 227 (1987).

The scoring decision made by the sentencing judge in the present case is supported by both evidence and authority. I find no abuse of discretion and therefore would affirm.

I disagree with the majority's conclusion that the language in *Warner* addressing this scoring issue is mere dicta. In this regard, I note that, until today, our Court has routinely followed *Warner* with regard to this issue. For example, in *People v Harris,* unpublished opinion per curiam of the Court of Appeals, decided September 17, 1992 (Docket No. 126931), pp 2-3, we held:

Offense variable 12 is to be scored 50 points for two or more penetrations, 25 points for one penetration, and zero points for no penetrations. All penetrations arising from the same transaction are to be scored. However, the penetration resulting in the conviction is not to be calculated into the OV 12 score. Defendant argues that OV 12 was erroneously given a score of 50 points since defendant was only convicted on one charge of criminal sexual conduct and the guidelines instruct that the first penetration is not to be counted. The sentencing court stated that the penetrations were properly scored under OV 12 because the multiple penetrations were from the same overall criminal transaction—years of molestation. We believe that offense variable 12 was properly scored by the sentencing court. *People v Warner,* 190 Mich App 26, 27-29; 475 NW2d 397 (1991). In *Warner,* this

Court upheld a score of 50 points on offense varia-
ble 12 because the presentence report and the
victim's testimony showed that defendant had sex-
ually penetrated the victim six times over the
course of several months. This Court held that
such evidence may be used·to support the score of
50 on offense variable 12. Here, the evidence pre-
sented at trial supports the victim's testimony that
the defendant forced her to have sexual inter-
course approximately 50 times over the course of
two years. Therefore, the sentencing court's calcu-
lation of 50 points for offense variable 12 was not
an abuse of discretion.

The decision in *Warner* is binding precedent
pursuant to Administrative Order No. 1990-6, 436
Mich lxxxiv. In my view, the majority's failure to
follow *Warner* is a violation of that order.

Regarding the sentence itself, I would hold the
six- to fifteen-year sentence to be proportionate.
*People v Milbourn,* 435 Mich 630; 461 NW2d 1
(1990). Defendant entered his plea of guilty of
third-degree criminal sexual conduct pursuant to a
plea bargain in which the prosecutor agreed to
dismiss the original charge of first-degree criminal
sexual conduct. The conduct that led to defen-
dant's conviction was his *repeated* sexual abuse,
including penetration, of his daughter over a *nine*-
year period.

The majority orders a remand to the sentencing
court "for the limited purpose of determining if its
sentence would be changed in light of the correct
scoring of the guidelines." *Ante* 201-202. Such a
remand is unnecessary and a waste of valuable
judicial resources· The sentencing judge clearly
believed that the sentence he imposed was propor-
tionate and an appropriate social response to the
crime and the criminal. I agree and therefore
would affirm defendant's sentence. No reasonable
person would find the sentence disproportionate,

considering defendant's conduct.[1] Under the cir-
cumstances of this case, I would find a sentence of
any lesser term of years to be disproportionately
lenient and therefore invalid.

The scoring of the sentencing guidelines is not
an end in itself but rather a means to achieve a
proportionate sentence. Because the majority and I
agree that defendant's sentence is proportionate
and valid, the ordered remand is an academic
exercise without a purpose. As appellate judges,
we should "decline . . . to engage the trial court in
the futile exercise of marching up the sentencing
hill again, only to hand down the same sentence
and march back down." *People v Ristich,* 169 Mich
App 754, 759; 426 NW2d 801 (1988), and *United*

---

[1] The following recommendation contained in the presentence re-
port is unassailable:

> It is this agent's belief that Mr. Polus has not come to terms
> with his deviant behavior, nor with the serious nature of the
> crime he committed against his daughter. Over a period of
> years, [complainant] was robbed of her childhood. She was
> robbed of her innocence, and her dreams for the future have
> been jeopardized. In the nine years that this situation evolved,
> the defendant had unlimited opportunity to seek help and to
> change his behavior. This activity only stopped as a result of a
> direct confrontation with the Criminal Justice System. For the
> protection of the community, deterrence of others of like mind,
> and to punish the defendant, it is respectfully recommended
> that Tommy Roman Polus be sentenced to six (6) to fifteen (15)
> years in the State Prison of Southern Michigan . . . .

Also noted in the presentence report is a summary of the victim's
statements:

> The victim, . . . has written several letters to the Court. She
> says, "I would like for my father to be locked up for as many
> years as he hurt me! (nine years) and when he gets out, he
> needs serious help! I feel like he should be locked up for nine
> years or more so he can be hurt like I was hurt for those years.
> No matter how long he gets in prison it could never compare to
> what he has done to me. I have never had a childhood like
> most kids and I've grown up way too fast for everything and I
> wish I could start all over and be a child (a little girl)!"

*States v Tucker,* 404 US 443, 449-452; 92 S Ct 589; 30 L Ed 2d 592 (1972) (Blackmun, J., dissenting).

I would affirm defendant's sentence.