PEOPLE v RABY

Docket No. 108010. Decided February 5, 1998. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, affirmed the judgments of the Court of Appeals and the circuit court. Rehearing denied *post*, 1230.

Robert D. Raby pleaded guilty in the Genesee Circuit Court, Donald R. Freeman, J., of one count of first-degree criminal sexual conduct involving the sexual abuse of his daughters. The Court of Appeals, TAYLOR, P.J., and J. G. COLLINS, J. (MCDONALD, J., concurring in part and dissenting in part), ruled that *People v Polus*, 197 Mich App 197 (1992), required a finding that there was an error in the scoring of Offense Variable 12. Two members of the panel expressed their opinion that *Polus* had been wrongly decided, however, and, were they free to so hold, they would conclude that OV 12 was properly scored in the present case (Docket No. 173809). Thereafter, the Court of Appeals vacated the decision and ordered that a special panel be convened to resolve the conflict between this case and *People v Warner*, 190 Mich App 26 (1991). 213 Mich App 801 (1995). The special panel, SMOLENSKI, SAAD and BANDSTRA, JJ. (MARKMAN, CORRIGAN and MARKEY, JJ., concurring), and (M. J. KELLY, P.J., dissenting), affirmed the scoring of OV 12 (Docket No. 173809). The defendant seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice MALLETT, and Justices BRICKLEY, BOYLE, and WEAVER, the Supreme Court *held*:

A putative error in the scoring of the sentencing guidelines is not a basis upon which an appellate court can grant relief.

The scoring of the sentencing guidelines is not an end in itself, but rather a means to achieve a proportionate sentence. Where, as in this case, the sentence is not disproportionate, there is no basis for relief on appeal. Because the guidelines do not have the force of law, a scoring error does not violate the law. A claim of a miscalculated variable is not in itself a claim of legal error. Only an invalid sentence is subject to being set aside on appeal.

Affirmed.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that the Supreme Court today embarks on a decision that ignores not only the facts of this case, but many years of published decisions

of the Supreme Court and the Court of Appeals. Nothing less than the utter disregard of the great weight and breadth of those decisions can support the route the majority takes today. The majority in truth merely adopts the dissent in *People v Milbourn*, 435 Mich 630 (1990), and stands on their heads several cases before, and each guidelines scoring case following, it, unsupported by good law or good reason.

Justice TAYLOR took no part in the decision of this case.

218 Mich App 78; 554 NW2d 25 (1996) affirmed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, and *Donald A. Kuebler*, Chief, Research, Training and Appeals, for the people.

State Appellate Defender (by *Susan M. Meinberg*) for the defendant.

PER CURIAM. The defendant pleaded guilty of first-degree criminal sexual conduct and was sentenced to serve twenty to thirty years in prison. The Court of Appeals affirmed, rejecting the defendant's claim that the sentencing guidelines had been improperly scored. We also affirm.

I

The defendant sexually abused his daughters. This criminal behavior began in 1991 and extended into 1993, when one of his daughters reported the abuse at school. Originally charged with a variety of offenses, he pleaded guilty in December 1993 to one count of first-degree criminal sexual conduct. MCL 750.520b(1)(a); MSA 28.788(2)(1)(a).

Sentencing took place in March 1994. Scoring the guidelines, the circuit court gave 50 points for Offense Variable 12.[1] That variable reads:

| OV 12 | CRIMINAL SEXUAL PENETRATION(S) |
|-------|-------------------------------|
| 50* | 2 or more criminal sexual penetrations |
| 25* | 1 criminal sexual penetration |
| 0 | No criminal sexual penetrations |

Score all penetrations involving the offender arising out of the same criminal transaction.

\* In CSC 1st and CSC 3rd do not score the one penetration that forms the basis of the conviction offense.

The sentencing proceeding was brief, and the defendant did not challenge the scoring of the guidelines.

The sentence imposed by the circuit court was a term of twenty to thirty years in prison. The twenty-year minimum sentence was at the high end of the range recommended by the guidelines.[2]

On appeal, the defendant challenged the scoring of the guidelines, and Court of Appeals ruled that further proceedings were necessary in light of an error in the scoring of OV 12. 213 Mich App 801; 541 NW2d 282 (1995). All three judges of the panel agreed that this outcome was required by the Court's prior decision in *People v Polus*, 197 Mich App 197; 495 NW2d 402 (1992). However, two panel members expressed

---

[1] The circuit court also gave points for several other offense variables, including ten points under OV 6 ("Multiple Victims"). The defendant later disputed the scoring of OV 6, but it did not alter the offense severity level and, for reasons explained later in this opinion, need not be addressed on appeal.

[2] The circuit court's scoring of the guidelines placed the defendant in cell A-IV of the life-CSC grid; the recommended range for the minimum sentence was 96-240 months.

the opinion that *Polus* had been wrongly decided and indicated that, were they free to so hold, they would conclude that OV 12 was properly scored in the present case.[3]

The Court of Appeals soon vacated its opinion and ordered that "a special panel shall be convened pursuant to Administrative Order No. 1994-4 to resolve the conflict between this case and *People v Warner*, 190 Mich App 26 [475 NW2d 397] (1991)." 213 Mich App 801.

After further briefing, the seven-judge special panel issued its decision. 218 Mich App 78; 554 NW2d 25 (1996). The lead opinion, with three signatures, was authored by Judge SMOLENSKI. He wrote to uphold the scoring of OV 12. Employing a different analysis, Judge MARKMAN wrote a concurring opinion that also bears three signatures. Judge M. J. KELLY dissented.

The defendant has applied to this Court for leave to appeal.

II

The dispute regarding the scoring of OV 12 centers on whether penetrations that occur on separate occasions are to be scored under the variable. The instructions state that points are to be scored for "all penetrations involving the offender arising out of the same criminal transaction." Elsewhere in the guidelines manual, the word "transaction" is defined in this manner:[4]

---

[3] In a separate concurrence, Judge McDONALD stated his agreement with the *Polus* opinion.

[4] In the sentencing guidelines, the word "transaction" appears only in OV 12.

*Transaction*: The acts occurred in a continuous time sequence and displayed a single intent or goal. [Michigan Sentencing Guidelines (2d ed, 1988), p 10.]

This issue regarding the proper scoring of OV 12 has divided the Court of Appeals. In *People v Warner*, *supra*, the Court of Appeals appeared to conclude that it was permissible to score 50 points for OV 12 where there had been an extended period of molestation. However, the present issue was not developed in the *Warner* opinion, and the statements of the Court of Appeals can be characterized as *dicta*.[5]

In *People v Polus*, *supra*, the majority said that the 50-point scoring decision in such an instance was error, since separate assaults committed over a lengthy period were not part of the "same criminal transaction."[6] The contrary view in *Warner* was dismissed as "mere dicta." 197 Mich App 201, n 3.

Judge GRIFFIN dissented in *Polus*, saying that *Warner* was "binding precedent."[7] He added:

The majority orders a remand to the sentencing court "for the limited purpose of determining if its sentence would be changed in light of the correct scoring of the guidelines." *Ante* 201-202. Such a remand is unnecessary

---

[5] Mr. Warner was sentenced as an habitual offender, and thus the sentencing guidelines did not apply. Michigan Sentencing Guidelines (2d ed, 1988), p 6. Further, his sentence was found not to violate the principle of proportionality. *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

[6] The majority in *Polus* did not order a resentencing, but rather a remand to determine whether the sentence would be changed in light of the change in the scoring. The trial court was told to bring the defendant before the court for a resentencing only if it first determined that the scoring change would result in a new sentence. 197 Mich App 201-202.

[7] See Administrative Order No. 1990-6, 436 Mich lxxxiv, which was extended in several subsequent administrative orders. This "first-out" rule was amended in Administrative Order No. 1994-4, 445 Mich xci, and was extended indefinitely in Administrative Order No. 1996-4, 451 Mich xciii.

and a waste of valuable judicial resources. The sentencing judge clearly believed that the sentence he imposed was proportionate and an appropriate social response to the crime and the criminal. I agree and therefore would affirm defendant's sentence. No reasonable person would find the sentence disproportionate,[8] considering defendant's conduct. Under the circumstances of this case, I would find a sentence of any lesser term of years to be disproportionately lenient and therefore invalid.

The scoring of the guidelines is not an end in itself but rather a means to achieve a proportionate sentence. Because the majority and I agree that the defendant's sentence is proportionate and valid, the ordered remand is an academic exercise without a purpose. As appellate judges, we should "decline . . . to engage the trial court in the futile exercise of marching up the sentencing hill again, only to hand down the same sentence and march back down. *People v Ristich*, 169 Mich App 754, 759; 426 NW2d 801 (1988), and *United States v Tucker*, 404 US 443, 449-452; 92 S Ct 589; 30 L Ed 2d 592 (1972) (Blackmun, J., dissenting). [197 Mich App 207-209.]

In *People v Bivens*, 206 Mich App 284; 520 NW2d 711 (1994), a majority of the panel disagreed with *Polus* on the issue whether *Warner* was dicta. Instead, the majority accepted Judge GRIFFIN's view, expressed in *Polus*, that *Warner* was controlling precedent. The majority thus upheld the scoring of 50 points for OV 12.[9]

---

[8] Mr. Polus pleaded guilty of third-degree criminal sexual conduct, MCL 750.520d; MSA 28.788(4), and was sentenced to a term of six to fifteen years in prison.

[9] In a concurring opinion, Judge M. J. KELLY characterized *Warner* as "simply inapplicable" since the panel in that case "never addressed the issue." 206 Mich App 288. However, Judge KELLY concurred in the majority's decision to affirm, because the sentencing judge in *Bivens* had clearly indicated that the sentences imposed were the proper sentences, without regard to how the guidelines might be scored.

The issue arose again in *People v Hyland*, 212 Mich App 701; 538 NW2d 465 (1995). There, the panel agreed with Judge KELLY's *Bivens* concurrence, concluding that it was bound to follow *Polus* and that *Bivens* was "wrongly decided." 212 Mich App 711-714.[10]

In the present case, the special panel was summoned to resolve the conflict in earlier cases, and was thus freed from the question whether *Warner* was binding precedent. The members of the special panel were thus able to focus on the merits of the OV 12 issue, and their several opinions well summarize the competing schools of thought with regard to OV 12.

In his lead opinion, Judge SMOLENSKI concluded:

> Applying the plain language of the guidelines, we conclude that, as in this case and in *Warner*, a defendant's ongoing penetrations of a victim over an extended period can constitute acts that occurred in a continuous time sequence and displayed a single intent or goal. This is especially true in the present case. The victim was a child who lived in the same household as defendant. Defendant molested or penetrated the victim daily for more than two years. That conduct under these circumstances gives rise to an inference that defendant intended to conceal his continued molestation of the victim during that extended period. Thus, such conduct constituted acts that occurred in a continuous time sequence and displayed a single intent or goal.

---

[10] In *Hyland*, the panel concluded:

> At sentencing, the trial court erred in considering all of the prior conduct of defendant in the scoring of OV 12. Pursuant to *Polus, supra*, the trial court can only consider conduct arising out [of] the same criminal transaction in the scoring of OV 12. We affirm defendant's convictions. We remand for resentencing in a manner consistent with this opinion. We do not retain jurisdiction. [212 Mich App 714.]

Alternatively, even if we were to find that the guidelines' definition of "transaction" was ambiguous and judicial construction therefore warranted, we would conclude that the foregoing construction is a reasonable construction that best accomplishes the object and purpose of OV 12. [218 Mich App 83-84.]

Concurring, Judge MARKMAN discussed *People v Vonins (After Remand)*, 203 Mich App 173, 176-177; 511 NW2d 706 (1993), in which the Court had said that the same prior conviction could be scored under both PRV 2 and PRV 6. Judge MARKMAN continued:

Similarly, the assessment of points for prior instances of criminal sexual penetration for both OV 12 and OV 25 would be proper. These variables are directed, at least arguably, toward different purposes: OV 12 specifically addresses penetrations arising out of the same criminal transaction whereas OV 25 addresses contemporaneous criminal acts. Yet most conduct covered by OV 12, under either the broad or narrow reading of it, would also constitute contemporaneous criminal acts under OV 25. Because these variables, although not identical, do overlap, the conduct that would support scoring under OV 12 would generally also support scoring under OV 25.

Accordingly, we should interpret the criminal sexual conduct guidelines with the understanding that factors may be scored under more than one offense variable. In this context, the rule that we should interpret specific variables so as to produce an harmonious whole does not support the narrow reading of the "continuous time sequence" element of OV 12 over the broader reading.

As discussed above, both the narrow reading and the broader reading of this element of OV 12 are reasonable. Therefore, under a de novo standard of review, we would not reverse the trial court's reading of OV 12. We conclude that OV 12 is broad enough to reach the prior instances of criminal penetration at issue here. Accordingly, we find no abuse of discretion in the trial court's scoring of OV 12 for defendant's prior instances of criminal sexual penetration.

We additionally conclude that the same factor may be scored under more than one offense variable. [218 Mich App 90-91.]

In dissent, M. J. KELLY presented his view that the *Polus* interpretation is correct:

There is no reasonable justification for calling numerous instances of criminal sexual conduct over a two-year period the same criminal transaction. The defendant was not charged with "numerous criminal sexual penetrations over a two-year period." He was charged in five specific counts. There is no such count or crime entitled "years of molestation." Not even the tortured exegesis of the mind of a medieval monk can deduct four from five and come up with years of molestation. For what little it is worth, I think *People v Polus*, 197 Mich App 197, 199; 495 NW2d 402 (1992), was correctly decided. The Supreme Court could not muster the votes to grant leave on an application, 447 Mich 952 (1994), and we should not supply their missing votes.

In conclusion, I believe it is unseemly to couch appellate decision-making in language posturing indignation at the crimes and criminals on review, torturing support for the interpretation that results in the longest durance for the criminal. If the prosecutor here wanted two, three, four, or five convictions and the resulting sentencing consequences, he need not have entered into a bargain for one conviction. The result reached in *Polus* was eminently correct; the instruction on its face limits consideration to penetrations involved in the same criminal transaction. Prior criminal sexual penetrations between the defendant and the victim were scored under OV 25, and properly so. If the trial court concluded that OV 25 inadequately addressed the importance of prior penetrations, it had authority to exceed the guidelines with very little risk of reversal by way of appellate review, but that is another subject. [218 Mich App 93-94.]

III

The special panel has concluded that it was not error for the circuit court to score 50 points for OV 12 in this case. While we have no disagreement with that conclusion, we believe it entirely unnecessary to reach the merits of this scoring question.

As Judge GRIFFIN correctly explained in *Polus*, "The scoring of the sentencing guidelines is not an end in itself but rather a means to achieve a proportionate sentence." 197 Mich App 208. Where, as here, the sentence is not disproportionate, there is no basis for relief on appeal.

In *People v Mitchell*, 454 Mich 145, 173-178; 560 NW2d 600 (1997), we elaborated on the point that is central to an understanding of the Michigan sentencing guidelines: They are not the product of legislative action. We repeated in *Mitchell*, 454 Mich 175, our earlier statement that, "because our sentencing guidelines do not have a legislative mandate, we are not prepared to *require* adherence to the guidelines." *People v Milbourn*, 435 Mich 630, 656-657; 461 NW2d 1 (1990).

In *Mitchell*, these considerations led to the principle that guides us in the resolution of the present case:

> Simply stated, because this Court's guidelines do not have the force of law, a guidelines error does not violate the law.[35] Thus, the claim of a miscalculated variable is not in itself a claim of legal error.
>
> [35] For the same reason, error cannot be predicated on a claim that the instructions were misinterpreted.

[454 Mich 175 (footnote 36 omitted).]

In *Mitchell*, we elaborated further on these concepts, observing again that only an "invalid" sentence is subject to being set aside on appeal:

> We have long recognized and recently reaffirmed that a sentence may be set aside only when it is invalid. *People v Whalen*, 412 Mich 166, 169-170; 312 NW2d 638 (1981); *In re Dana Jenkins*, 438 Mich 364, 373; 475 NW2d 297 (1991). In *Jenkins*, we observed in dicta that the defendant may challenge the scoring of the sentencing guidelines under MCR 6.429; and in *People v Hernandez*, 443 Mich 1; 503 NW2d 629 (1993), and *People v Walker*, 428 Mich 261; 407 NW2d 367 (1987), we discussed preservation of guidelines scoring issues. To the extent that our decisions have been construed to authorize review and reversal for scoring errors or errors of misinterpretation, *Milbourn*'s correct observation that guidelines do not have the force of law is controlling. Such relief is unavailable.[37]
>
> The challenge here asserted is directed not to the accuracy of the factual basis for the sentence, but, rather, to the judge's calculation of the sentencing variable on the basis of his discretionary interpretation of the unchallenged facts. The challenge does not state a cognizable claim for relief. There is no juridical basis for claims of error based on alleged misinterpretation of the guidelines, instructions regarding how the guidelines should be applied, or misapplication of guideline variables.
>
> As emphasized in *Milbourn*, the guidelines are vehicles to assist the trial judge regarding where a given defendant falls on the sentence continuum recognized by *Milbourn*. Where the guidelines calculation differs from the trial court's intended sentence, the judge is alerted that the sentence falls outside a normative range and should be evaluated to assure that it is not unfairly disparate, has a rational basis, and is not disproportionate. On postsentence review, guidelines departure is relevant solely for its bearing on the *Milbourn* claim that the sentence is disproportionate.[40] Thus, application of the guidelines states a cognizable claim on appeal only where (1) a factual predicate is wholly unsup-

ported, (2) a factual predicate is materially false, and (3) the sentence is disproportionate.[41]

Appellate courts are not to interpret the guidelines or to score and rescore the variables for offenses and prior record to determine if they were correctly applied. Guidelines are tools to aid the trial court in the exercise of its authority and a framework for the appellate courts' inquiry into the question whether the sentence is disproportionate and, hence, an abuse of the trial court's discretion. The Court of Appeals erred in reversing defendant's sentence.

---

[37]As in *Walker*, an "effective challenge" involving guidelines is a challenge to the accuracy of the factual information on which the sentence was based, a challenge grounded in the due process clause under *Townsend* [*v Burke*, 334 US 736; 68 S Ct 1252; 92 L Ed 2d 1690 (1948)]. *Walker* authorized a review procedure for the preservation of sentencing appeals. *Hernandez* limited *Walker* by holding that an appellate court is not compelled to grant a motion to remand where there was "evidence supporting the judge's initial scoring of the sentencing guidelines variable . . . ." *Id.* at 3. As in *Walker*, the challenge in *Hernandez* centered on the factual accuracy of the basis for the sentence. Properly understood, *Hernandez* affirmed that the accuracy of the information and the adequate notice in the presentence report gave rise to reviewable claims on appeal. It did not authorize a challenge on the basis of the judge's interpretation of the facts underlying the sentence and the scoring decisions based on it, that is, the manner in which the judge scored the variables.

[40] Contrary to defendant's claim, we have never held that the sentencing guidelines provide a clear basis on which sentences might be overturned on appeal. Moreover, in requiring judges to state their reasons for departing from the guidelines, the order *does not* speak of appellate review, but, rather, of the Sentencing Guidelines Advisory Commission's use of that information in generating analysis of whether the guidelines are working effectively.

[41] To ask whether it is a misapplication of the guidelines to score points for criminal sexual conduct under OV 12, where prior penetrations were not part "of the same transaction," is to ask a question whose answer has no legal relevance on appeal. As an inquiry about what the guidelines committee had in mind regarding assessment measures that do not have the force of law, the inquiry, at best, asks for an opinion about how the majority of judges would have sentenced the defendant.

---

[454 Mich 176-178 (footnotes 38 and 39 omitted).]

This analysis is equally applicable in the present case. A putative error in the scoring of the sentencing guidelines is simply not a basis upon which an appellate court can grant relief.

For these reasons, we reject the analysis provided in the opinion of the Court of Appeals, but affirm the judgments of the Court of Appeals and the circuit court.[11] MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, BOYLE, and WEAVER, JJ., concurred.

CAVANAGH, J. (*dissenting*). In this case we are only called upon to analyze a question of scoring a sentence guideline variable that concerns the definition of a criminal "transaction." Instead, the majority takes this opportunity to advance ill-advised dicta from *People v Mitchell*, 454 Mich 145; 560 NW2d 600 (1997), to a position of controlling law. In the process, this Court sanctions the evisceration of sentencing guidelines in Michigan, questions its own authority, and harkens a return to the days of grossly disparate sentencing decisions subject to no real appellate review. Therefore, I dissent.

I

A

This case involves the question of scoring of OV 12, criminal penetrations. The instructions for OV 12 are as follows:

---

[11] We are not persuaded that the other questions presented by the defendant should be reviewed by this Court.

| OV 12 | CRIMINAL SEXUAL PENETRATION(S) |
|---|---|
| 50* | 2 or more criminal sexual penetrations |
| 25* | 1 criminal sexual penetration |
| 0 | No criminal sexual penetrations |

Score all penetrations involving the offender arising out of the same criminal transaction.

* In CSC 1st and CSC 3rd do not score the one penetration that forms the basis of the conviction offense.

The defendant here pleaded guilty of one count of CSC I with his then seven-year-old daughter. As part of the plea bargain, three other counts of CSC I and one count of CSC II were dismissed. The trial judge scored the defendant at fifty points for OV 12,[1] relying on the presentence investigator's report that the daughter reported that she had been molested for approximately two years, including repeated finger penetrations of her vagina and rectum. The trial court apparently chose to characterize this history as one extraordinarily long criminal transaction.

B

The phrase "criminal transaction" appears to have developed in Michigan from the law of double jeopardy. *People v White*, 390 Mich 245; 212 NW2d 222 (1973). The phrase, which appears nowhere else in the current guidelines, is defined by the guidelines manual as "acts occur[ring] in a continuous time sequence and display[ing] a single intent or goal." The definition of this phrase was sufficiently convoluted at the Court of Appeals to produce three opinions

---

[1] Defendant also questions the scoring of ten points for OV 6, but even if OV 6 were scored as he wishes, it would not change his scoring grid or recommended sentence.

from the special panel. In analyzing them, I find that only the dissent has taken the route that seems to me to simply and clearly be required.

The two opinions below that find that a two-year course of molestation is a single "transaction" do so by means much too foreign to the language we utilize for me to agree with them. In one opinion, the Court of Appeals replaces the word transaction with a concept apparently involving as long a time as may go on where acts that are intended to conceal the original acts occur. This creation purports to arise from the plain language of the guidelines. 218 Mich App 78; 554 NW2d 25 (1996).

In the concurring opinion, it seems as though the Court was willing to leave no dictionary unturned in its quest to imagine a criminal sexual transaction that lasted two years. Eventually, coming upon definitions involving "characterized by continuity," or "connected,"[2] and noting that elsewhere in a dictionary one may find that "continual" is often used interchangeably with "intermittent,"[3] the opinion declares victory; a transaction is all those things that are connected, and, it seems, as long as they intermittently reoccur, the connection shall be forever unbroken.

I agree with the dissent below that the majority "has acquiesced in the trial court's rationalizing a desired result to justify an untoward interpretation of the scoring guidelines in an egregious case."[4] As noted in the dissent below, the crime entitled "years of molestation" does not exist as yet, and the defend-

---

[2] 218 Mich App 87 (MARKMAN, J., concurring).

[3] *Id.*

[4] *Id.* at 92 (KELLY, P.J., dissenting).

ant should be sentenced for the acts he was convicted of.[5] I think the meaning of the phrase "criminal transaction" is simple and clear, at least before these opinions of the Court of Appeals. I would find the characterizing of a two-year history of abuse as a single criminal transaction to be error, and remand for resentencing. While my preference for a decision in this case appears above, the majority's use of this case to discard a substantial body of prior decisions compels me to continue.

II

A

The majority has today undertaken an endeavor that returns us to an era that, I think, is far better left in the past, and does so for little more reason than might be called appellate efficiency. The sentencing guidelines were adopted as a mechanism, within the Court's authority, to attempt to correct a problem that came to light in Michigan in the late 1970's—disparate sentencing.[6] Simply put, it became apparent to the Court that sentencing in Michigan, even after adjust-

---

[5] The prosecution was certainly not required to offer the defendant the plea bargain herein. The prosecution charged the defendant with five counts of CSC. It could have proceeded to trial on each, and, if the trial judge was correct, many more. Likewise, if the trial judge found the defendant's conduct particularly egregious, he was free to depart upward on the basis of an articulated rationale. There was no need to artificially manipulate the guidelines scoring in this case, yet that is both what occurred and what this Court now implicitly agrees to accept in all future cases where it might occur.

[6] For a brief history of the adoption of sentencing guidelines in Michigan, along with an examination of the changes from the first edition, which are included in the current edition, see, McComb, *An Overview of the Second Edition of the Michigan Sentencing Guidelines*, 67 Mich B J 863 (1988).

ing for whatever variables one might choose, was substantially harsher for defendants who were members of certain minorities. We felt that it would be helpful both to sentencing judges and the cause of fairness for judges to be aware of what sentence would be imposed by other members of the bench, given a similar defendant convicted of the instant crime. Toward that end we developed sentencing guidelines to take into account those factors that were capable of objective consideration.[7]

B

Following our adoption of the sentencing guidelines, a substantial body of law has developed in this Court regarding their fair application and review on appeal. The Court today focuses on the language of footnote 41 in *Mitchell*, that questions concerning the accuracy of scoring variables under the guidelines are questions which have "no legal relevance on appeal." I disagree with the import of this statement, and question the accuracy, appropriateness, and wisdom of the Court dismissing its many prior decisions in this and similar areas as "irrelevant."[8] Likewise, the Court of Appeals thought this question was of such rele-

---

[7] The current (second) edition of the guidelines was implemented by unanimous vote of this Court in Administrative Order No. 1988-4.

[8] A brief visit to some of our past "irrelevant" decisions might include *People v Byrd*, 452 Mich 866 (1996), *People v Edmond*, 451 Mich 930 (1996), *People v Houston*, 448 Mich 312, 319-330; 532 NW2d 508 (1995), *People v Williams*, 448 Mich 910 (1995), *People v Merriweather*, 447 Mich 799, 807-808; 527 NW2d 460 (1994), *People v Wilson*, 444 Mich 936 (1994), *People v Abbett*, 443 Mich 863 (1993), *People v Hackworth*, 443 Mich 884 (1993), *People v Hernandez*, 443 Mich 1; 503 NW2d 629 (1993), *People v Stewart*, 442 Mich 937 (1993), *In re Dana Jenkins*, 438 Mich 364, 376; 475 NW2d 279 (1991), *People v Milbourn*, 435 Mich 630, 655-661; 461 NW2d 1 (1990), which the majority in *Mitchell* cited as supporting the irrelevance of guidelines, and *People v Walker*, 428 Mich 261; 407 NW2d 367 (1987).

vance that it merited a special panel to resolve conflicting opinions, an understandable view given the multitude of published decisions of the Court of Appeals addressing the accuracy or merits of guidelines scoring decisions, as well as those decisions that at the least consider the guidelines scoring to be significant to the outcome of a decision.[9]

---

[9] See *People v Dilling*, 222 Mich App 44, 54-56; 564 NW2d 56 (1997), *People v Lyons*, 222 Mich App 319, 321-323; 564 NW2d 114 (1997), *People v Acoff*, 220 Mich App 396, 400; 559 NW2d 103 (1996), *People v Dixon*, 217 Mich App 400, 411; 552 NW2d 663 (1996), *People v Elliott*, 215 Mich App 259, 260-261; 544 NW2d 748 (1996), *People v Garner*, 215 Mich App 218, 219-220; 544 NW2d 478 (1996), *People v Gibson*, 219 Mich App 530, 534-535; 557 NW2d 141 (1996), *People v Haacke*, 217 Mich App 434, 435-436; 553 NW2d 15 (1996), *People v Hack*, 219 Mich App 299, 312-314; 556 NW2d 187 (1996), *People v Jarvi*, 216 Mich App 161, 163-165; 548 NW2d 676 (1996), *People v Nantelle*, 215 Mich App 77, 84-85; 544 NW2d 667 (1996), *People v Spicer*, 216 Mich App 270, 274-276; 548 NW2d 245 (1996), *People v Armstrong*, 212 Mich App 121, 130-131; 536 NW2d 789 (1995), *People v Ayers*, 213 Mich App 708, 723-725; 540 NW2d 791 (1995), *People v Cotton*, 209 Mich App 82, 84-85; 530 NW2d 495 (1995), *People v Jackson*, 211 Mich App 414, 415; 536 NW2d 253 (1995), *People v Kreger*, 214 Mich App 549, 552-553; 543 NW2d 55 (1995), *People v Love (After Remand)*, 214 Mich App 296, 301-302; 542 NW2d 374 (1995), *People v Maben*, 208 Mich App 652, 653-655; 528 NW2d 850 (1995), *People v Piotrowski*, 211 Mich App 527, 529-532; 536 NW2d 293 (1995), *People v Rodriguez*, 212 Mich App 351, 353-355; 538 NW2d 42 (1995), *People v Watkins*, 209 Mich App 1, 5-6; 530 NW2d 111 (1995), *People v Alexander*, 207 Mich App 227, 229-230; 523 NW2d 653 (1994), *People v Bivens*, 206 Mich App 284, 285-287; 520 NW2d 711 (1994), *People v Chesebro*, 206 Mich App 468, 469-474; 522 NW2d 677 (1994), *People v Eaves*, 203 Mich App 356, 358-360; 512 NW2d 1 (1994), *People v Hoffman*, 205 Mich App 1, 24; 518 NW2d 817 (1994), *People v Whitney*, 205 Mich App 435, 436-437; 517 NW2d 814 (1994), *People v Woods*, 204 Mich App 472, 473-475; 517 NW2d 239 (1994), *People v Hannan*, 200 Mich App 123, 127-128; 504 NW2d 189 (1993), *People v Johnson*, 202 Mich App 281, 288-291; 508 NW2d 509 (1993), *People v Jones*, 201 Mich App 449; 506 NW2d 542 (1993), *People v LeMarbe*, 201 Mich App 45, 48-49; 505 NW2d 879 (1993), *People v Moseler*, 202 Mich App 296, 300; 508 NW2d 192 (1993), *People v Rosales*, 202 Mich App 47, 48-49; 507 NW2d 776 (1993), *People v Vonins (After Remand)*, 203 Mich App 173, 176-177; 511 NW2d 706 (1993), *People v Buck*, 197 Mich App 404, 430; 496 NW2d 321 (1992), *People v Polus*, 197 Mich App 197; 495 NW2d 402 (1992), *People v Stone*, 195 Mich App 600, 607-608; 491 NW2d 628 (1992), *People v Wilson*, 196 Mich App 604, 612; 493 NW2d 471 (1992), *People v Anway (After Remand)*, 189 Mich App 706, 708-714; 473 NW2d 804 (1991), *People*

I question how the majority of this Court, which, along with the dissenters, have both authored and dissented in many opinions in this area, can so summarily decide that such questions, are, upon further reflection, merely irrelevant and inconsequential.[10]

---

v Daniels, 192 Mich App 658, 674-675; 482 NW2d 176 (1991), *People v Harris,* 190 Mich App 652, 662-664; 476 NW2d 767 (1991), *People v Hudson,* 187 Mich App 31, 33-35; 466 NW2d 313 (1991), *People v Kaczorowski,* 190 Mich App 165, 173; 475 NW2d 861 (1991), *People v Tyler,* 188 Mich App 83, 86; 468 NW2d 537 (1991), *People v Warner,* 190 Mich App 26; 475 NW2d 397 (1991), *People v Williams,* 191 Mich App 269, 278-279; 477 NW2d 877 (1991), *People v Williams,* 188 Mich App 54, 60; 469 NW2d 4 (1991), *People v Milton,* 186 Mich App 574, 577-578; 465 NW2d 371 (1990), *People v Parlor,* 184 Mich App 235, 236; 457 NW2d 55 (1990), *People v Payton,* 186 Mich App 387, 388; 464 NW2d 907 (1990), *People v Reyna,* 184 Mich App 626, 628-634; 459 NW2d 75 (1990), *People v Szczesniak,* 186 Mich App 492, 493-494; 465 NW2d 22 (1990), *People v Puckett,* 178 Mich App 224, 227-229; 443 NW2d 470 (1989), *People v Reddish,* 181 Mich App 625, 628-630; 450 NW2d 16 (1989), *People v Anderson,* 166 Mich App 455, 482; 421 NW2d 200 (1988), *People v Brooks,* 169 Mich App 360, 365-366; 425 NW2d 555 (1988), *People v Day,* 169 Mich App 516, 517; 426 NW2d 415 (1988), *People v Jerovsek,* 172 Mich App 489, 490-491; 432 NW2d 350 (1988), *People v McCracken,* 172 Mich App 94, 103-106; 431 NW2d 840 (1988), *People v Phelon,* 173 Mich App 157, 158-159; 433 NW2d 384 (1988), *People v Roberson,* 167 Mich App 501, 519; 423 NW2d 245 (1988), *People v Tarket,* 165 Mich App 650, 652-654; 419 NW2d 41 (1988), *People v Boucher,* 165 Mich App 361, 362-363; 418 NW2d 464 (1987), *People v Buckles,* 155 Mich App 1, 8-9; 399 NW2d 421 (1986), *People v Eggleston,* 148 Mich App 494, 504; 384 NW2d 811 (1986), *People v Garvie,* 148 Mich App 444, 452-454; 384 NW2d 796 (1986), *People v Green,* 152 Mich App 16, 18; 391 NW2d 507 (1986), *People v Kisielewicz,* 156 Mich App 724, 726-728; 402 NW2d 497 (1986), *People v Walker,* 155 Mich App 247, 248-249; 399 NW2d 489 (1986), *People v Whetro,* 152 Mich App 524, 526-529; 394 NW2d 3 (1986), *People v Wiggins,* 151 Mich App 622, 626-627; 390 NW2d 740 (1986), *People v Yarbough,* 148 Mich App 139, 145-148; 384 NW2d 107 (1986), *People v Benson,* 142 Mich App 720, 722-723; 370 NW2d 16 (1985), *People v Clark,* 147 Mich App 237, 239-243; 382 NW2d 759 (1985), *People v Johnson,* 144 Mich App 497; 376 NW2d 122 (1985), *People v Love,* 144 Mich App 374, 375-378; 375 NW2d 752 (1985), *People v Williams,* 147 Mich App 1, 4-7; 382 NW2d 191 (1985).

[10] Of course, such questions are not at all inconsequential. One of the reasons for requiring statements on the record of the reasons for departure from the guidelines is to allow for appellate review. By announcing to the world that it will no longer review guidelines scoring decisions, the Court informs all parties and trial judges where to place those sentencing

The majority seems convinced that we have all been laboring under the assumption that the guidelines have the force of law, and that, having "determined" this not to be so, we must now hail the flaming bush and reverse course. I find this to be not only unpersuasive as an argument, but, as a matter of law, misguided, ill-focused, and not well grounded.

C

The majority cites but three cases to support its conclusion, *Mitchell, People v Milbourn*, 435 Mich 630, 656-657; 461 NW2d 1 (1990), and Judge GRIFFIN's dissent in *People v Polus*, 197 Mich App 197, 208; 495 NW2d 402 (1992).[11] *Mitchell* began this misadventure by lifting a quote from *Milbourn*.

> [W]e believe that the second edition of the sentencing guidelines is the best "barometer" of where on the continuum from the least to the most threatening circumstances a case falls.
>
> Nevertheless, because our sentencing guidelines do not have a legislative mandate, we are not prepared to *require* adherence to the guidelines. [*Id.* at 656-657 (emphasis in the original).]

Two things are worth noting about this quotation. The first is the sentence that immediately follows this quotation. "We note that departures are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing." *Id.* at 657. This discussion, which was to become

---

decisions that could not, and should not, survive appellate review or the light of day.

[11] This may be in large part because, as noted earlier, to support the majority's position, one must inherently agree that time began anew with *Mitchell*.

the basis of *Mitchell* and today's final disposal of the
guidelines as a useful tool, dealt entirely with sen-
tencing departures. Nothing here, or elsewhere in our
decision in *Milbourn*, supports the idea that we
would then, or should now, countenance obvious
errors in scoring that lead to incorrect guideline
ranges.

Second, we should note the paragraph that immedi-
ately follows the one quoted in *Mitchell*.

> However, because of the increased sophistication of the
> second edition of the guidelines and because they represent
> the sentencing practices of the great majority of our state's
> sentencing judges, they become a useful tool in carrying out
> the legislative scheme of properly grading the seriousness
> and harmfulness of a given crime and given offender within
> the legislatively authorized range of punishments. [*Mil-
> bourn* at 657-658.]

This calls to mind two simple and absolute truths.
First, the wrong tool for the job is usually worse than
no tool at all. In this context, absent appellate review,
the trial courts will receive no guidance on questions
arising under the guidelines, nor, for that matter, need
they, since now the trial court becomes the final arbi-
ter of scoring questions, which, of course, means
each trial court, individually and without real compar-
ison to its judicial brethren. This returns us to the
days of trial courts sentencing with no guidance from
their peers or the Court. As to the second truth, I am
reminded again that some of my colleagues on the

bench harbor great disdain for sentencing guidelines in any context.[12]

Finding nothing in *Milbourn* to support the leap made in *Mitchell* and adopted today, I see no reason for the majority's holding that is supported, much less required, by law. I decline to join it.

III

The majority restates the position of *Mitchell*, which, as noted above, was an inaccurate mutation of *Milbourn*, that the guidelines, being mandated by our administrative order, lack the force of law. Traditionally, our administrative orders have been issued and followed under the assumption that we were exercising our lawful authority pursuant to Const 1963, art 6, § 5 over the practice and procedure of the courts of this state.

Such authority seems clearly lawful, and, if so, we are certainly capable of establishing or reviewing sentencing guidelines and the practice and procedure involved in their application. Recall, "[t]he Legislature then left to the judiciary, with regard to most crimes, the task of determining the sentence to be imposed upon each offender within given bounds." *Milbourn* at 651.[13]

---

[12] See, generally, *Milbourn* at 652-653, n 18. See, also, *id.* at 670, BOYLE, J., dissenting, for the only discussion in *Milbourn* that supports the majority's decision today.

[13] Again, in the majority's quotation of *Mitchell* regarding the roles of the trial and appellate courts, I hear the echo of the dissent's complaint in *Milbourn* of the "disenfranchise[ment of] the trial court judiciary of its unique role as the link between a defendant and a victim . . . ." *Id.* at 670, BOYLE, J., dissenting. The majority continues this line between the appellate and trial courts, which, as a matter of law and this Court's authority, is a facade.

To the extent the majority suggests that our authority lacks the force of law, and, hence, we cannot mandate that our orders be followed and sit in review to assure this, I am certain that a wide variety of recipients of our administrative orders will be relieved to learn that their compliance is merely voluntary.

IV

The extraordinary weakness of the support found by the majority for its position forces me to look to one other reason for today's decision. As noted in *Mitchell* at 174, n 34, some of my colleagues on the Court find the workload of reviewing sentencing decisions objectionable:

> Careful evaluation of the effect on trial and appellate courts will undoubtedly attend legislative adoption of sentencing guidelines pursuant to 1994 PA 445; MCL 769.32 *et seq.*; MSA 28.1097(3.2) *et seq.* The Court of Appeals experienced a 132 percent increase in appeals in criminal cases between 1988 and 1994. This Court has not published a single opinion remanding a sentence for failure to meet the requirements of proportionality since *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), and my research indicates that only two such cases have been remanded or reversed by order. This research also indicates that the Court of Appeals has published approximately fifteen such reversals during the same period, with only six since *People v Merriweather*, 447 Mich 799; 527 NW2d 460 (1994). On the other hand, a conservative estimate based on very rough research indicates that during the six years since *Milbourn* was decided, this Court has reviewed well over one thousand cases in which the issue was raised. Given the administrative burden of appeals generated and the limited nature of the relief available, the benefit from such allocation of resources is, at best, unclear.

I find it disconcerting, to say the least, that the
Court might consider disposing of all appellate review
in a given area under the guise of judicial economy.[14]
Furthermore, it seems that the obvious conclusion to
be drawn is that, under the current system of review,
the trial courts, in general, are properly applying the
law, including *Milbourn*. While such an occurrence
certainly is desirable, it hardly follows that, if a given
decision or law seems faithfully applied, we forever
dispose of all review of that area.[15]

                              V

This Court today embarks on a decision that
ignores not only the facts of the case that is pre-
sumed to have brought the issue before it, but many
years of published decisions of this Court and the
Court of Appeals. Nothing less than the utter disre-
gard of the great weight and breadth of those deci-
sions can support the route the majority takes today.
The majority in truth merely adopts the dissent in
*Milbourn*, and stands on their heads several cases
before and each guidelines scoring case following it.
It does so unsupported by good law or good reason,
and, hence, I dissent.

KELLY, J., concurred with CAVANAGH, J.

TAYLOR, J., took no part in the decision of this case.

---

[14] Certainly, there are also other areas where large numbers of applica-
tions for leave result in minimal relief. And while the Court possesses a
variety of administrative tools to control the flow of applications, abdica-
tion of its judicial responsibility should not be included in this array.

[15] Then again, does forever mean forever? Just seven years ago, it
seemed *Milbourn* had settled this question. The life expectancy of some
decisions of this Court is becoming alarmingly short.