# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MELVIN MARTIN THOMAS,

        Defendant-Appellant.

UNPUBLISHED
March 1, 2018

No. 335182
Wayne Circuit Court
LC No. 16-002318-01-FC

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Defendant, Melvin Thomas, appeals as of right his jury trial conviction for first-degree criminal sexual conduct (CSC-I), MCL 750.520b. Defendant was sentenced to 50 to 80 years' imprisonment for his CSC-I conviction. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of the sexual assault of the victim on October 17, 1995. The victim, who was 21 years old at the time, was on her way to get dinner for her sick mother when she stopped at an ATM machine near the intersection of Outer Drive and Grand River in Detroit to withdraw cash for the meal. After withdrawing $60 from the ATM, the victim walked back to her car. She noticed two men approaching her, who were later identified as defendant and Lorenzo Anthony. According to the victim, as she quickly attempted to get her car door unlocked, Anthony got "really close," put "something hard" in her side, and said, "don't yell, don't move and give me the money," which caused the victim to believe she was being robbed. The victim gave Anthony everything she had, including her money and jewelry. The victim testified that defendant was also following close behind and was acting like a lookout. Anthony then ordered her to get into her car's front seat, which she did because she was scared and thought that he had a gun.

According to the victim, defendant sat in the driver's seat, Anthony was in the passenger seat, and she was in between them. Defendant began driving the car while Anthony placed the victim in a headlock and began hitting her in the back of the head. Anthony told the victim to get in the back seat, and she complied. Anthony also got in the back seat while continuing to hit the victim and then forced her to perform oral sex on him. Defendant subsequently stopped the car, at which time Anthony vaginally penetrated the victim.

-1-

Defendant and Anthony switched positions, with defendant now in the back seat. According to the victim, defendant first told her to get on her stomach. The victim could feel his penis near her anus, but he did not penetrate her at that time. The victim further testified that defendant instructed her to lie on her back, at which time he vaginally penetrated her. Defendant subsequently returned to the front seat with Anthony where, as it appeared to the victim, they divided the money and jewelry between them. According to the victim, both men got out of the car and left her in the back seat. The victim drove herself home where the police were called. The victim was then treated at Detroit Receiving Hospital, and a rape kit was used to recover DNA evidence.

According to the victim, about a week after the incident, the police asked her to view a lineup; however, she was unable to identify Anthony or defendant. Twenty years later, the police contacted the victim, informing her that a DNA match had occurred relevant to her case; ultimately, the police showed her a photo array, in which she identified defendant.

Defendant was convicted and sentenced as previously indicated above. This appeal followed, in which defendant raises several issues. We address each in turn.

## II. PROSECUTORIAL MISCONDUCT

Defendant first argues that the prosecutor's questioning of defendant regarding other alleged specific acts of assaultive behavior against women amounted to prosecutorial misconduct, such that the trial court erred when it denied defendant's request for a mistrial.

Defendant preserved these arguments for appeal by objecting and moving for a mistrial based on the prosecutor's questions during cross-examination of defendant. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011); *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003).

This Court generally "review[s] de novo claims of prosecutorial misconduct to determine whether defendant was denied a fair and impartial trial." *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). "We review for an abuse of discretion a trial court's decision regarding a motion for a mistrial." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant . . . and impairs his ability to get a fair trial." *Alter*, 255 Mich App at 205 (quotation marks and citation omitted; ellipsis in original).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014) (quotation marks and citation omitted).

In this case, defendant argues prosecutorial misconduct occurred during two separate portions of his cross-examination. Regarding the first occurrence, the following exchange occurred:

[*Defendant*]: I don't bash on women.

[*Prosecutor*]: Did you just say—I'm sorry. Did you just say you don't bash on women?

[*Defendant*]: No, I don't.

[*Prosecutor*]: What about the domestic violence report that was made by [NW]?

[*Defendant*]: That was false.

[*Trial Court*]: Let's move on.

[*Defendant*]: That was false. She was drunk.

[*Trial Court*]: Let's move on.

[*Prosecutor*]: What about the domestic violence report made by [SJ]?

[*Defendant*]: That was false, too. You show me the case.

[*Prosecutor*]: Okay. And when you say you wouldn't do that type of stuff that Mr. Anthony was doing in the back of the car, did you mean forcing yourself on women?

[*Defendant*]: I don't do that either.

[*Prosecutor*]: What about [MB]?

[*Defendant*]: I ain't do that either.

[*Prosecutor*]: You didn't attempt to rape her in the year 2000?

[*Defendant*]: No. I am not a rapist. I'm not a child molester. I'm not none of that. I work hard for everything I gets.

[*Prosecutor*]: So if that young lady told the police you tried to force your penis inside of her vagina when she was 14 years old—

[*Trial Court*]: Let's do this. Let's do this. Let's move on. Let's move on.

[*Prosecutor*]: Your Honor, the defendant has opened the door to this line of questioning.

[*Trial Court*]: I don't care. Let's move on. Let's move on.

The second occurrence that defendant challenges occurred a short time later during cross-examination:

-3-

[*Defendant*]: Yeah, I did.  I said that I did.  I did have sex with [the victim].

[*Prosecutor*]: You did?

[*Defendant*]: Wasn't no tension.  Wasn't no force or no threat, none of that.  I was threatened by my life by her.

[*Prosecutor*]:  So she threatens your life, sir?

[*Defendant*]: Yeah.  She the one who pulled my clothes off.

[*Prosecutor*]: How did she threaten your life?

[*Defendant*]: Because she put me in a situation I didn't want to be in.  I was uncomfortable.  I never experienced nothing like that in my life.

[*Prosecutor*]: You've never experienced nothing like that in your life?

[*Defendant*]: No.

[*Prosecutor*]: Not in the year 2000 with [MB]?

[*Defendant*]: No.

At that point, defense counsel objected and the prosecutor was warned not to pursue this line of questioning again.

Shortly after defendant testified and outside the presence of the jury, defense counsel requested a mistrial arguing that the prosecution exposed the jury to evidence regarding an alleged incident between defendant and MB that was previously ruled inadmissible during an earlier MRE 404(b) motion hearing.  In response to defendant's motion for a mistrial, the prosecutor argued that defendant's testimony made the prosecutor's line of questioning permissible.  The trial court stated:

> In terms of what occurred during cross-examination or for that matter direct examination, I do find that the defendant made other sexual assaults relevant when he denied ever assaulting, sexually assaulting, any other women. Although the defendant made these lines of questioning relevant, I chose to exercise my discretion and limit questioning to the charged offense and the MRE 404(b) incident previously litigated.[1]

---

[1] The trial court was referring to another witness whose testimony the trial court permitted the prosecution to introduce under MRE 404(b).  However, this witness's testimony is not pertinent to the issues raised on appeal.

* * *

Other than those two brief situations, there were no other references to the [MB] incident. I do not find that these two very brief references to the [MB] incident warrant a finding of manifest necessity requiring extreme remedy of declaring a mistrial because, as I mentioned, they were otherwise admissible.

Further, even if those references were not otherwise admissible, the trial irregularity certainly does not deprive the defendant from having a fair trial.

When, as in the instant case, an "issue is as much an evidentiary issue as it is a prosecutorial misconduct matter," this Court "focus[es] on whether the prosecutor elicited the testimony in good faith." *People v Dobek*, 274 Mich App 58, 70-71; 732 NW2d 546 (2007). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Id*. at 70.

MRE 404 states in pertinent part:

**(a) Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) *Character of Accused.* Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same[.]

Additionally, MRE 405(a) provides as follows:

**(a) Reputation or Opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct.

In this case, the occurrences of alleged misconduct involved defendant offering evidence of a pertinent trait of his own character; specifically, that he was not the kind of person who would "bash" or sexually assault women and that he had never been in such a situation before.

MRE 405(a) allows inquiry during cross-examination into specific instances of conduct to rebut defendant's contention. MRE 608(b) also permits cross-examination inquiry into specific instances of conduct if, in the court's discretion, the inquiry is "probative of truthfulness or untruthfulness." The fact that the trial court had ruled that the prosecution could not introduce evidence of the MB incident in its case in chief under MRE 404(b) did not render that evidence inadmissible for all other purposes, such as the limited inquiry permitted by MRE 405(a) or MRE 608(b), because evidence that is inadmissible for one purpose may still be admissible for another proper purpose. *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008).

It appears from the record that the prosecutor was attempting to challenge defendant's truthfulness related to his claim that he was not assaultive. Furthermore, there is nothing in the record to indicate that the prosecutor had an improper motive for inquiring into the specific acts. The prosecutor repeatedly argued that her questioning was proper, thus supporting the contention that she had a good-faith belief that the evidence she sought was admissible. In fact, as stated above, the trial court concurred that the prosecutor's questions were proper and would have elicited admissible testimony; however, the trial court exercised its discretion and discontinued the prosecutor's line of questioning. Therefore, because the prosecutor's questioning represented a good-faith effort to elicit admissible evidence, there was no prosecutorial misconduct. *Dobek*, 274 Mich App at 70-71; see also *People v Lukity*, 460 Mich 484, 498-499; 596 NW2d 607 (1999) (concluding that a prosecutor did not commit misconduct by asking the defendant on cross-examination whether the defendant provided marijuana to his son, where the defendant had testified that he only participated in appropriate activities with his children, because the cross-examination inquiry was admissible pursuant to MRE 404(a)(1) and MRE 405(a)).

Notwithstanding the fact that the prosecutor did not commit misconduct, the trial court's curative instructions removed any potential prejudicial effect of the prosecutor's questions. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Here, the trial court provided the following curative instruction to the jury:

> Ladies and gentlemen, earlier today there was a reference to some sort of uncharged incident from 2000. I'm instructing you now that you are not to consider any reference whatsoever of the uncharged 2000 incident and it shall play no role whatsoever in your deliberations. All right? I see a lot of head nodding.

Additionally, during the final jury instructions, the trial court reiterated that the jury should only consider evidence that the trial court admitted. Specifically, the trial court stated:

> At times during trial I have excluded evidence that was offered or stricken testimony that was heard. Do not consider these things in deciding the case. Make your decision only on the evidence that I let in and nothing else.

Therefore, any potential for improper prejudice was cured. *Seals*, 285 Mich App at 22; *Abraham*, 256 Mich App at 279.

For the same reasons explained above, the prosecutor's conduct did not deny defendant a fair trial, and the trial court therefore did not abuse its discretion by denying defendant's motion for a mistrial. *Alter*, 255 Mich App at 205.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that defense counsel was ineffective by failing to call certain witnesses and failing to ask questions that had been specifically requested by defendant.

-6-

To preserve a claim of ineffective assistance of counsel, a defendant must move in the trial court for a new trial or a *Ginther*[2] hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). In this case, defendant did not move in the trial court for a new trial or a *Ginther* hearing. However, defendant filed a motion in this Court seeking a remand to permit him to move in the trial court for a *Ginther* hearing. This Court denied defendant's motion.[3] Consequently, because no testimonial record was made in the trial court, we treat this issue as unpreserved. *People v Musser*, 259 Mich App 215, 220-221; 673 NW2d 800 (2003).

"A claim of ineffective assistance of counsel presents a mixed question of law and fact." *Brown*, 294 Mich App at 387. Factual findings are reviewed for clear error and questions of constitutional law are reviewed de novo. *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014) (quotation marks and citation omitted). We review an unpreserved claim of ineffective assistance of counsel for errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

On an ineffective assistance of counsel claim, the defendant "bears the burden of proving that (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017) (quotation marks and citation omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted).

In this case, defendant supports his appellate argument by submitting his own affidavit, in which he asserted that defense counsel did not call character witnesses that defendant requested, and Kizzie Parker's affidavit, in which she averred that she would have testified that she had "a brief relationship" with defendant and that defendant "was a nice guy, and he never did anything violent or inappropriate in [her] presence." As an initial matter, we note that our review of defendant's unpreserved ineffective assistance of counsel claim is limited to the existing record. *Matuszak*, 263 Mich App at 48. "[A] party may not expand the record on appeal, which consists of 'the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced.' " *People v Gingrich*, 307 Mich App 656, 659 n 1; 862 NW2d 432 (2014), quoting MCR 7.210(A)(1). The affidavits submitted by defendant are therefore not part of the record.

Nonetheless, "[d]ecisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Thomas*, unpublished order of the Court of Appeals, entered May 25, 2017 (Docket No. 335182).

defendant of a substantial defense." *Id*. (quotation marks and citation omitted; alteration in original). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Jackson*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (quotation marks and citation omitted). There is a strong presumption that defense counsel used effective trial strategy, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), and this Court "will not substitute our judgement for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence," *Unger*, 278 Mich App at 242-243.

In this case, defendant presented a defense through his own testimony in which he claimed that the sexual contact with the victim was consensual and that the victim forced him to have sex with her. Defendant further testified that he did not engage in assaultive behavior toward women. Even if we were to accept the assertion that Parker would have testified that defendant had never acted violently in her presence during their brief relationship, which is similar to defendant's own testimony that was given at trial, there is no claim that Parker was present during the incident involving defendant and the victim in this case. Testimony such as Parker's proposed testimony would not contradict the victim's detailed testimony about what defendant did to her. Therefore, the absence of Parker's testimony did not deprive defendant of a substantial defense that would have had an impact on the trial outcome. *Jackson*, 313 Mich App at 432. Moreover, additional character witnesses likewise would not have been of any further benefit. Defendant has not made any claim that any witness that was not called at trial could have somehow shown that he was innocent of sexually assaulting the victim in this case. Furthermore, defendant has not identified who these supposed witnesses were, and defendant has not indicated what questions he asked trial counsel to pose to witnesses that were not actually asked. A defendant claiming that he received ineffective assistance of counsel "bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). In short, defendant has not overcome the strong presumption that defense counsel's trial strategy regarding the presentation of witnesses was effective, and defense counsel's performance was not deficient. *Russell*, 297 Mich App at 716; *Payne*, 285 Mich App at 190. Moreover, because the character witnesses that defendant claims should have been called to testify would not have had any effect on defending against the charges, defendant has not established the prejudice prong because he has failed to show that the outcome of the proceedings would have been different but for defense counsel's decision not to call these witnesses. *Foster*, 319 Mich App at 391. Therefore, defendant has not demonstrated that he was denied the effective assistance of counsel. *Id*.

Defendant again requests, in the alternative, that we remand for an evidentiary hearing. This Court has denied this request previously. In light of our analysis above, we conclude that remand is unnecessary because defendant has failed to demonstrate "any issue for which further factual development would advance his claim." See MCR 7.211(C)(1)(a); *People v Chapo*, 283 Mich App 360, 368-369; 770 NW2d 68 (2009).

## IV. SCORING ERRORS

Next, defendant contends that offense variable (OV) 1 should have been assessed at five points rather than 15 points because insufficient evidence existed to show that a gun was used in the crime and that OV 12 should have been assessed at zero points rather than 50 points because defendant did not commit the two additional penetrations that were the basis for score.

As an initial matter, we note, as did the trial court, that the judicial guidelines apply to defendant's offense because it was committed before January 1, 1999. MCL 769.34(1); *People v Reynolds*, 240 Mich App 250, 253-254; 611 NW2d 316 (2000). The judicial guidelines, which were used in Michigan courts from 1983 to 1998, were crafted by the Michigan Supreme Court and promulgated by administrative order. *People v Hegwood*, 465 Mich 432, 438; 636 NW2d 127 (2001).

Under the judicial guidelines, the trial court's sentencing decision is to be reviewed for an abuse of discretion, applying the principle of proportionality standard set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). *People v Babcock*, 469 Mich 247, 253-254; 666 NW2d 231 (2003) (explaining the history of sentencing guidelines and appellate review of sentences in Michigan). "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636. Furthermore, as it relates to the judicial guidelines, "[a]ppellate review of guidelines calculations is limited, and a sentencing court has discretion in determining the number of points to be scored provided there is evidence on the record that adequately supports a particular score." *People v Cain*, 238 Mich App 95, 129-130; 605 NW2d 28 (1999) (quotation marks and citation omitted).

Our Supreme Court has explained that "because the recommended ranges found in the judicial guidelines were not the product of legislative action, a sentencing judge was not necessarily obliged to impose a sentence within those ranges." *Hegwood*, 465 Mich at 438. More specifically, in *People v Raby*, 456 Mich 487, 496, 499; 572 NW2d 644 (1998),[4] our Supreme Court held that unless the sentence is disproportionate, an alleged scoring error in the scoring of the judicial guidelines "is simply not a basis upon which an appellate court can grant relief."[5] In reaching this conclusion, the *Raby* Court reasoned as follows:

> Simply stated, because this Court's guidelines do not have the force of law, a guidelines error does not violate the law.[35] Thus, the claim of a miscalculated variable is not in itself a claim of legal error.

---

[4] The Michigan Supreme Court recognized in *Hegwood*, 465 Mich at 439, that *Raby* had been superseded by MCL 769.34(10). However, MCL 769.34 is the statute that makes the judicial guidelines inapplicable to felonies committed on or after January 1, 1999, and that makes the legislative guidelines applicable to felonies committed on or after that date. MCL 769.34(1) and (2). Therefore, because the instant case involves an offense committed before January 1, 1999, to which the judicial guidelines are applicable, the holding in *Raby* is applicable to the instant case.

[5] As explained by the *Hegwood* Court, the holding of *Raby* differs from the current approach under the legislative guidelines that is set forth in MCL 769.34(10), which allows appeals based on a claim that the guidelines were erroneously scored. *Hegwood*, 465 Mich at 439.

[35] For the same reason, error cannot be predicated on a claim that the instructions were misinterpreted.

[*Id*. at 496 (quotation marks and citation omitted).]

The *Raby* Court further concluded that an appellate court may only set aside an "invalid" sentence, explaining as follows:

> The challenge here asserted is directed not to the accuracy of the factual basis for the sentence, but, rather, to the judge's calculation of the sentencing variable on the basis of his discretionary interpretation of the unchallenged facts. The challenge does not state a cognizable claim for relief. There is no juridical basis for claims of error based on alleged misinterpretation of the guidelines, instructions regarding how the guidelines should be applied, or misapplication of guideline variables.
>
> As emphasized in *Milbourn*, the guidelines are vehicles to assist the trial judge regarding where a given defendant falls on the sentence continuum recognized by *Milbourn*. Where the guidelines calculation differs from the trial court's intended sentence, the judge is alerted that the sentence falls outside a normative range and should be evaluated to assure that it is not unfairly disparate, has a rational basis, and is not disproportionate. On postsentence review, guidelines departure is relevant solely for its bearing on the *Milbourn* claim that the sentence is disproportionate. *Thus, application of the guidelines states a cognizable claim on appeal only where (1) a factual predicate is wholly unsupported, (2) a factual predicate is materially false, and (3) the sentence is disproportionate.*
>
> Appellate courts are not to interpret the guidelines or to score and rescore the variables for offenses and prior record to determine if they were correctly applied. Guidelines are tools to aid the trial court in the exercise of its authority and a framework for the appellate courts' inquiry into the question whether the sentence is disproportionate and, hence, an abuse of the trial court's discretion. [*Id*. at 497-498 (quotation marks and citation omitted; emphasis added).]

In this case, as explained below, defendant is not entitled to be resentenced based on his claim that OVs were incorrectly scored because defendant has not stated a cognizable appellate claim on this ground pursuant to *Raby*.

First, the record supports the factual predicate for the trial court's scoring decision with respect to OV 1. The judicial sentencing guidelines state that OV 1 for the aggravated use of a weapon should be assessed at 15 points if there was "[a] firearm pointed toward victim or touching with another weapon." Michigan Sentencing Guidelines (2d), p 44. Five points should be assessed if there was "[a] firearm displayed, implied, or possessed; any other weapon displayed." *Id*. The judicial guidelines also state, "In multiple offender cases, when one offender is assessed points for the presence, type, and/or use of a weapon, all offenders shall be assessed the same number of points." *Id*. Further, a "firearm refers to an operational or non-

-10-

operational firearm, or any instrument fashioned to appear to be a firearm," and a trial court should assess five points if "an offender uses an object in his or her pocket to suggest the presence of a firearm." *Id*.

On appeal, defendant's only contention is that there was no evidence of a weapon. However, the victim testified that Anthony "had something hard" in her side as he robbed her and that she thought he had a gun. According to the victim, defendant was close behind Anthony and acting as a lookout. Furthermore, the presentence investigation report (PSIR) contained defendant's statements indicating that he saw Anthony "holding her with something to her side," that the victim "did say he had a gun," and that defendant "want[ed] the Judge to know he [Anthony] had a gun." Considering these statements, we cannot say that the factual predicate for the trial court's decision to assess 15 points for OV 1 was "wholly unsupported" or "materially false." *Raby*, 456 Mich at 497-498.

Next, the record also supports the factual predicate for the trial court's scoring decision with respect to OV 12. The judicial sentencing guidelines state that OV 12 for criminal sexual penetrations should be scored at 50 points if the offense involved "2 or more criminal sexual penetrations" and that the trial court should score "all penetrations *involving* the offender arising out of the same criminal transaction." Michigan Sentencing Guidelines (2d), p 45 (emphasis added). When the conviction is for CSC-I, the trial court should "not score the one penetration that forms the basis of the conviction offense." *Id*. The trial court should assess zero points if there were "[n]o criminal sexual penetrations." *Id*.

During sentencing, the trial court assessed OV 12 at 50 points, adopting the prosecution's argument that the criminal transaction involved both defendant and Anthony, and that, in addition to defendant's penetration, which was the underlying penetration for the CSC-I conviction, Anthony's additional two penetrations should be counted because they still "involved" the offender. For purposes of the judicial guidelines, "transaction" is defined to mean "[t]he acts occurred in a continuous time sequence and displayed a single intent or goal." *Id*. at p. 10.

Clearly, the criminal transaction in this case spanned from the time Anthony and defendant approached the victim and robbed her to the time that Anthony and defendant got out of her car after they had both sexually assaulted her while in the car. The combined sexual assaults included three penetrations. The judicial sentencing guidelines do not define involving or involve, but "involve" has been defined to mean "to engage as a participant" or "to relate closely." *Merriam-Webster's Collegiate Dictionary* (11th ed). Additionally, "participate" has been defined, in relevant part, as "to have a part or share in something." *Id*. In determining that 50 points would be assessed for OV 12, the trial court found that, based on the victim's trial testimony, (1) defendant was with Anthony and acted as a lookout when the victim was first robbed; (2) defendant drove the vehicle while Anthony repeatedly raped the victim in the back seat; (3) after Anthony was finished, defendant swapped positions with him and defendant continued assaulting the victim by sexually penetrating her; (4) defendant and Anthony then divided the proceeds from the robbery and left the victim in her car; and (5) at the end of the incident, defendant and Anthony discussed what they were going to do next, further showing that they were acting in concert. Accordingly, we cannot say that the factual predicate for the trial court's conclusion that Anthony's two penetrations of the victim involved defendant, such that

50 points were appropriately assessed for OV 12, was "wholly unsupported" or "materially false." *Raby*, 456 Mich at 497-498.

Next, we turn to evaluating the proportionality of defendant's sentence. In applying the principle of proportionality, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines, recommended range." *Milbourn*, 435 Mich at 661. Determining whether a sentence is proportionate requires the trial court to "take into account the nature of the offense and the background of the offender." *Id*. at 651. "[D]epartures are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing," and the extent of any departure must also follow the principle of proportionality. *Id*. at 657, 660. Additionally, in *People v Houston*, 448 Mich 312, 321-324; 532 NW2d 508 (1995), the Michigan Supreme Court gave the following examples of factors that could be considered as unaccounted for, or inadequately accounted for, by the guidelines: the seriousness of the crime, aggravating factors not considered by the guidelines (including the nature of the relationship between the victim and the defendant, the defendant's misconduct while in custody, and the defendant's lack of remorse and low rehabilitation potential), and factors inadequately considered by the guidelines (such as a high degree of exploitation of the victim). There is no requirement that "a departure from guidelines is to be arithmetically measured to determine the propriety of a given sentence." *Id*. at 320 (quotation marks and citation omitted).

In this case, defendant's guidelines range was determined to be 180 to 360 months or life, and the trial court sentenced defendant to 50 to 80 years' imprisonment. The trial court noted several factors that it considered in concluding that the guidelines range did not adequately account for defendant's conduct. Specifically, the trial court considered (1) defendant's extremely high offense OV score of 105, which was more than two times the amount that was required under the judicial guidelines to place him within the maximum OV level that was in fact used to calculate his guidelines range, (2) defendant's additional convictions that were not accounted for in the sentencing guidelines, and (3) the egregious nature of the crime, including the fact that after defendant abducted the victim, robbed the victim, took her to a remote alley, and raped her, defendant "sarcastically" told her that she needed to be more careful around ATM machines. The trial court stated that defendant's "conduct cannot be properly quantified in any mathematical model . . . that could be used [to formulate] a reasonable sentence." We conclude that the trial court sufficiently indicated its reliance on important factors about the nature of this heinous offense and the background of the offender that were inadequately accounted for by the judicial guidelines to justify its sentence and that the sentence was proportionate to the seriousness of the matter, especially considering that defendant's OV score for this offense was more than double the score necessary to place defendant in the highest possible OV level.[6]

---

[6] We note that it is not clear that defendant's minimum sentence constitutes a departure since the guidelines expressly provided for a minimum sentence of "180-360 or life." See *People v Harris*, 439 Mich 996 (1992) (BOYLE, J., concurring and writing separately) (expressing "concern" over the fact that an opinion of this Court, from which leave to appeal was being denied, "appear[ed] to be a sub silentio holding that, where the guidelines call for a numerical range 'or life,' a sentence above the numerical range is a 'departure' "). Nonetheless, whether

*Milbourn*, 435 Mich at 657, 660-661; *Houston*, 448 Mich at 321-324. The trial court's sentence did not constitute an abuse of discretion. *Milbourn*, 435 Mich at 636. Therefore, defendant's sentence was not invalid, and he is not entitled to resentencing based on his challenge to the scoring of OV 1 and OV 12. *Raby*, 456 Mich at 497-498.

## V. CRUEL OR UNUSUAL PUNISHMENT

Finally, defendant contends that his 50 to 80 year sentence is cruel or unusual because the term exceeds his natural life expectancy, and thus, the sentence equates to a life sentence.

A defendant must "advance a claim below that his sentences were unconstitutionally cruel or unusual" in order to preserved the issue for appeal. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Defendant failed to object during sentencing on the ground that his sentence was cruel or unusual, and this Court denied his motion to remand on this matter;[7] therefore, this issue is unpreserved. *Id*.

Accordingly, our review is for plain error affecting substantial rights. *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to show that defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Furthermore, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; second alteration in original).

The United States Constitution prohibits "cruel and unusual punishment," see US Const Am VIII, and the Michigan Constitution prohibits "cruel or unusual punishment," see Const 1963, art 1 § 16. "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). "[W]hether a penalty may be considered cruel or unusual is to be determined by a three-pronged test that considers (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." *Id*., citing *People v Bullock*, 440 Mich 15, 33-34; 485 NW2d 866 (1992).[8] "[T]o

---

considered a departure or not, we conclude that the sentence in this case was proportionate for the reasons stated above.

[7] *Thomas*, unpub order.

[8] The *Bullock* Court also noted "the goal of rehabilitation" was a fourth prong of the test. *Bullock*, 440 Mich at 34. However, the *Bullock* Court determined that it did not need to address this factor "at any length" in that case because "the penalty at issue here so clearly fail[ed] under the three primary prongs" of the analysis. *Id*. at 39 n 23. In this case, defendant has not made

be constitutionally proportionate, punishment must be tailored to a defendant's personal responsibility and moral guilt." *Bullock*, 440 Mich at 39. "[A] sentence that is proportionate is not cruel or unusual punishment." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) (citation omitted).

As discussed in detail above, defendant's sentence in this case was proportionate to the nature of the offense and the background of the offender. Therefore, defendant's sentence did not constitute cruel or unusual punishment and did not violate his rights under the Michigan Constitution or, consequently, the federal constitution. *Id*.; *Benton*, 294 Mich App at 204. Moreover, defendant has not advanced any argument addressed at comparing his sentence to penalties for other crimes under Michigan law or penalties imposed for this offense in other states. Thus, any such arguments are abandoned. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue."). "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Nonetheless, defendant contends that his sentence is cruel or unusual because he will likely die before being eligible for parole. However, defendant incorrectly assumes that he is entitled to parole. See *Bowling*, 299 Mich App at 558 (stating that Michigan law does not support the contention that a defendant is entitled to parole). Moreover, a defendant's age does not render an otherwise proportionate sentence disproportionate where the defendant's criminal record and the gravity of the offense justify the sentence imposed. See *id*. at 558-559 (stating that "defendant's age is insufficient to overcome the presumptive proportionality of his sentences, especially considering his lengthy criminal record and the gravity of his offenses").

Defendant also contends that the trial court failed to consider mitigating factors when it sentenced defendant. Defendant claims that these mitigating factors were his mental health history and his use of only a "minimum amount of force" during the sexual assault. As an initial matter, defendant has abandoned this issue by failing to cite any authority in support of his contention that a sentencing court must consider such mitigating factors. *Harris*, 261 Mich App at 50; *Kelly*, 231 Mich App at 640-641. Moreover, a trial court is not required to expressly consider such mitigating factors at sentencing. *People v Osby*, 291 Mich App 412, 416; 804 NW2d 903 (2011); *People v Johnson*, 309 Mich App 22, 34-35; 866 NW2d 883 (2015), vacated in part on other grounds 497 Mich 1042 (2015). Regardless of defendant's contention, a review of the record shows that the trial court was aware of and considered these mitigating factors, among others. Specifically, the trial court and the parties discussed defendant's PSIR at sentencing. The trial court explicitly heard about defendant's mental illness, and the PSIR

---

any argument addressing the rehabilitation prong and therefore has abandoned any argument that this prong would support a conclusion that his right against cruel or unusual punishment was violated. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

indicated that defendant received Social Security Disability for depression and bipolar disorder, despite his denial that he actually had bipolar disorder and his denial that treatment or medication was necessary. Defendant also had the opportunity to address the court during sentencing, at which time defendant claimed that the victim forced him to have sex with her.

In sum, defendant has failed to demonstrate plain error requiring reversal based on his claim that his sentence constituted cruel or unusual punishment.[9] *Carines*, 460 Mich at 763.

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle

---

[9] Defendant also relies on a passage of our Supreme Court's decision in *People v Lorentzen*, 387 Mich 167, 175; 194 NW2d 827 (1972), in which the Court quoted the following passage from *People v Murray*, 72 Mich 10, 17; 40 NW 29 (1888):

> " 'Where the punishment for an offense is for a term of years, to be fixed by the judge, it should never be made to extend beyond the average period of persons in prison life, which seldom exceeds 25 years.' "

However, when the above quotation is read in context, it is clear that the *Lorentzen* Court never adopted this statement as a bright-line rule for the constitutionality of sentences. The *Lorentzen* Court was merely citing a series of cases to give examples of how the Michigan Supreme Court and United States Supreme Court had previously reviewed whether a particular sentence constituted cruel or unusual, or cruel and unusual, punishment. See *Lorentzen*, 387 Mich at 171-176. Based on its survey of this legal authority, the *Lorentzen* Court reasoned that "the dominant test of cruel and unusual punishment is that the punishment is in excess of any that would be suitable to fit the crime." *Id*. at 176. Our Supreme Court subsequently made clear in *Bullock*, 440 Mich at 33-36, that the analysis of whether a sentence violated the Michigan Constitution's prohibition against cruel or unusual punishment was governed by the analysis set forth in *Lorentzen*, which requires consideration of the severity of the sentence, comparison to penalties for other crimes in Michigan, comparison to penalties imposed for the same offense in other states, and the goal of rehabilitation. Therefore, defendant's reliance on the portion of *Lorentzen* quoting *Murray* is misplaced.